1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
UNITED STATES FEDERAL        : CA Number 13-1021
TRADE COMMISSION,            :
                             :
          Plaintiff,         :
                             :
    v.                       : Washington, D.C.
                             : Tuesday, September 24, 2013
ARDAGH GROUP, S.A., et al., : 10:04 a.m.
                             :
- - - - - - - - - - - - - - x
```

**TRANSCRIPT OF PRE-HEARING CONFERENCE**
**BEFORE THE HONORABLE BARBARA J. ROTHSTEIN**
**UNITED STATES DISTRICT JUDGE**

APPEARANCES:

```
For the Plaintiff:    EDWARD DAVID HASSI, ESQUIRE
                      FEDERAL TRADE COMMISSION
                      600 Pennsylvania Avenue, N.W.
                      Suite H-374
                      Washington, D.C.  20580
                      202-326-2470
                      ehassi@ftc.gov

                      BRENDAN J. McNAMARA, ESQUIRE
                      FEDERAL TRADE COMMISSION
                      Mergers II Division
                      601 New Jersey Avenue, N.W.
                      Suite 6117
                      Washington, D.C.  20001
                      202-326-3703
                      bmcnamara@ftc.gov

                      CATHARINE MARY MOSCATELLI, ESQUIRE
                      FEDERAL TRADE COMMISSION
                      Bureau of Competition
                      600 Pennsylvania Avenue, N.W.
                      NJ 6119
                      Washington, D.C.  20580
                      202-326-2749
                      cmoscatelli@ftc.gov
```

2

1    **APPEARANCES (Continued):**

2    For the Plaintiff:        ANGELIKE ANDRINOPOULOS Mina, ESQUIRE
                              FEDERAL TRADE COMMISSION
3                             Bureau of Competition
                              601 New Jersey Avenue, N.W.
4                             Suite 6127
                              Washington, D.C.  20001
5                             202-326-3119
                              amina@ftc.gov
6

7    For Defendant            RICHARD SCHWED, ESQUIRE
        Ardagh Group:         SHEARMAN & STERLING
8                             599 Lexington Avenue
                              New York, NY 10022
9                             212-848-4000
                              rschwed@shearman.com
10
                              ALAN S. GOUDISS, ESQUIRE
11                            SHEARMAN & STERLING LLP
                              599 Lexington Avenue
12                            New York, NY 10022
                              212-848-4000
13                            agoudiss@shearman.com

14                            HEATHER LAMBERG KAFELE, ESQUIRE
                              SHEARMAN & STERLING, LLP
15                            801 Pennsylvania Avenue, N.W.
                              Washington, D.C.  20004
16                            202-508-8097
                              202-508-8100 (fax)
17                            hkafele@shearman.com

18   For Defendant            YONATAN EVEN, ESQUIRE
        Saint-Gobain          CRAVATH, SWAINE & MOORE LLP
19                            Worldwide Plaza
                              825 Eighth Avenue
20                            New York, NY 10019
                              212-474-1000
21                            212-474-3700 (fax)
                              yeven@cravath.com
22
     Court Reporter:          THERESA M. SORENSEN, CVR-CM
23                            Official Court Reporter
                              333 Constitution Avenue, N.W.
24                            Washington, D.C.  20001
                              202-354-3118
25                            theresams@erols.com

1      **P R O C E E D I N G S**

2              THE DEPUTY CLERK:  The matter before the Court,

3      Civil Action Number 13-1021, the United States Federal Trade

4      Commission versus Ardagh Group S.A., et al.

5              Counsel, please come forward and identify

6      yourselves for the record.

7              MR. HASSI:  Good morning, Your Honor.  I'm Ed

8      Hassi.  I'm with the Federal Trade Commission.  With me at

9      counsel table are Brendan McNamara, Cathy Moscatelli, and

10     Angelike Mina.

11             THE COURT:  Okay, good morning.

12             MR. SCHWED:  Good morning, Your Honor.  Richard

13     Schwed of Shearman & Sterling for the Defendant Ardagh

14     Group, and with me from Shearman & Sterling are Alan Goudiss

15     and Heather Kafele.

16             MR. EVEN:  Good morning, Your Honor.  Yonatan Even

17     with Cravath, Swaine & Moore, for Defendant Saint-Gobain.

18             THE COURT:  Well, good morning, counsel.

19             I don't know if you were prepared to address me,

20     but why don't we start out by my telling you my concerns,

21     and then you probably can fill me in on your plans.

22             I know we're having a hearing in about a month,

23     and my concern was just the structure of that hearing and

24     what you anticipate will take place there, and giving you

25     some idea of what I would expect in terms of the procedures

PUBLIC

4

1   you will use, and my sort of idiosyncrasies in terms of

2   conducting a hearing like this.

3       My first concern would be that all exhibits be

4   pre-marked and pre-admitted.  I can't imagine that there

5   would be any dispute about exhibits at a hearing like this,

6   but I could be wrong and you can tell me if I am wrong.  I

7   don't want to -- you know, we only have that short period of

8   time, and I know you're intending to fill it.  I don't want

9   to fill it with arguments about exhibits.

10      Just a word of caution.  If it turns out both

11  sides are using the same exhibit, pick a number, any number.

12  I don't care whose side it is.  Just don't use two different

13  numbers.  It's only going to confuse me, all right?  One

14  number will be enough.  If you really can cooperate, you

15  could number them consecutively, and then it will be very

16  easy for the clerk and for me.

17      Are there any exhibits that you would like for me

18  to review in advance that you think might speed things

19  along?  Now, let me just give you an idea of where I am

20  coming from.  I can't review them really in advance because

21  I'm coming back from a trip just the day before, and I'm not

22  taking them with me, I can tell you that.  But like if you

23  have some the night before the next day of the hearing you

24  think it would be good for me to take a look at, keep that

25  in mind.  I'm willing to do so that I sort of have a nodding

1    acquaintance with them before a witness takes the stand.

2         That's my next question.  Are there going to be

3    witnesses?  If so, tell me.  Tell me how many, both sides.

4    Will you agree on an order?  Will they be here, be ready to

5    go?  If you're going to have witnesses and they are kind of

6    experts in their field of some kind, I can read CVs faster

7    than they can tell me what they've done and what they've

8    published, and where they went to school.  You can take me

9    as far back as high school as long as you put it in writing

10   because then I can read it really fast.

11        I will throw out an idea, and I assume you're

12   going to say, yes, there are going to be witnesses.  One way

13   of speeding things along -- I'm not sure it will work here.

14   I just throw it out to you to think about -- many times in

15   hearings like this it can be helpful to prepare the direct

16   in the form of a statement and then have me read the

17   statement, ask questions if there's something in there I

18   don't understand, and then just proceed with

19   cross-examination.  Or with a limited direct if there are

20   charts to show me to help me along.  I don't know if that's

21   helpful or not.  Sometimes it is, sometimes it isn't.

22        It is helpful if you think that you've asked for

23   three days and then all of a sudden you find you're going

24   five and I don't have those five days, and then directs

25   would be helpful.  But if you're staying within your time

1  and you think it would be easier for me to get it with the

2  person here and then being able to -- pros and cons.  I will

3  let you decide.  I don't feel strongly about it because

4  sometimes my ability to ask questions of the witness, I

5  could do even with a written direct.  You decide.  It may be

6  acceptable for some witnesses and not others.

7          I'd like to hear from you if you've made any

8  allocation of time.  Are you splitting it?  FTC is

9  plaintiff, so usually you would get a rebuttal, although I'm

10  not sure rebuttal really applies to something like this.

11  But if you're thinking you want a rebuttal, then let's split

12  the time, and you carefully reserve some time.  I think we

13  should try to keep the time in mind.

14          I will try to give you an hourly day so that you

15  know how much time you have.  I don't believe in chess

16  clocks.  I think they ruin the ambiance of the courtroom,

17  but I do expect that my clerk will keep time.  So I think

18  you should be thinking of staying within your time limits.

19          Okay, I've given you my concerns.  Who wants to

20  lead off?  You look like you're ready to go, counsel.

21          MR. HASSI:  Yes, I think I am, Your Honor.  Again,

22  Ed Hassi for the Federal Trade Commission.

23          There are some concerns we have and some issues,

24  some of which you have already addressed.  I wanted to start

25  out with scheduling.  After our discussion with your law

1    clerk, we've had a further discussion about scheduling.  We

2    have some minors changes to the scheduling order.  They are

3    agreed by all parties.  We can send in a revised scheduling

4    order today, and I can walk you through those changes or we

5    can simply send it in, however Your Honor would like to

6    proceed.

7              THE COURT:  Tell me now, and also send it in.

8              MR. HASSI:  Okay.  So the changes -- I'm sorry,

9    I've got a black line here that shows it, which I can hand

10   up if Your Honor would like --

11             THE COURT:  Sure.

12             MR. HASSI:  -- to the scheduling order.

13             THE COURT:  Thank you.

14             MR. HASSI:  So the changes don't start until

15   page 6, paragraph 21, and that is as we've -- we just

16   completed expert discovery on Friday.  It may be that one or

17   both parties choose to make Daubert motions, and so we've

18   built into the schedule a briefing schedule for potential

19   Daubert motions.

20             THE COURT:  But you must know by now whether

21   you're going to bring Daubert motions.  It's not the 27th,

22   but you must have a pretty good idea.  You guys wouldn't

23   start a brief on the night of the 26th.  I know you better.

24             MR. HASSI:  Your Honor, I think it's our

25   expectation that we will bring one or more Daubert motions.

1  We, to be fair, are still evaluating that, but, yes, there

2  is someone back at the office working on Daubert motions.

3          THE COURT:  Why would I think that might be the

4  case, but let me explore this.  You're bringing a Daubert

5  motion to exclude the expert from this hearing?

6          MR. HASSI:  To exclude the expert, some of the

7  experts or some of the experts' testimony.

8          THE COURT:  Now, you're aware that in order to

9  make that ruling I need to hear from the expert, right?

10          MR. HASSI:  Yes, Your Honor.  I understand the

11  Catch 22 involved.

12          THE COURT:  Yes.  You still think that's a

13  worthwhile motion to make?  Is it because you don't want me

14  to consider what that expert is saying, is that it?

15          MR. HASSI:  I think what our intention is, is to

16  limit -- there are some opinions that are being offered here

17  by, for example, experts in the field that are going to say,

18  "Well, there's a trend, for example, to beer in cans," and

19  at least one of these experts thinks that he knows better

20  than the people that are -- the businesspeople that in the

21  field.  It's not based on any methodology, anything

22  testable.  It's just, "Gee, I've done this before, and I

23  know better than the people that are running these

24  multimillion dollar businesses."

25          We think that that should be brought to light.  I

1  understand it can be brought to light in cross-examination.

2  The concern we really have here is the limited period of

3  time that we have before Your Honor, and we thought that if

4  we could address some of these issues in advance in the form

5  of a motion, it might help speed things along at the trial.

6           THE COURT:  Okay.  I can tell you right now that I

7  probably will not have time to review those motions.  I

8  don't want to -- I don't want to nip in the bud any

9  wonderful briefs that you're doing, but I'm going to hear

10  these witnesses anyway.

11           MR. HASSI:  Okay.

12           THE COURT:  Well, you can give me the -- I'll hear

13  the witnesses.  Just know that I'm not going to be reading

14  those motions before I hear the witnesses, but I will read

15  them, and if it's correct that the testimony I've heard

16  should have been excluded or doesn't qualify as an expert,

17  then I can do that later on.  But in terms of your

18  timekeeping, that's what I'm trying to help you with.

19           MR. HASSI:  I appreciate that.

20           THE COURT:  In terms of the timekeeping, I won't

21  be in a position to exclude anybody before the hearing,

22  okay?

23           MR. HASSI:  Okay, Your Honor.

24           THE COURT:  So count on the fact that whoever

25  you're objecting to will testify, and if I do any excluding

1   of testimony, it will be later on when I have had a chance

2   to read the briefs.  Okay?

3          MR. HASSI:  I understand.

4          THE COURT:  So it's not going to help you in time,

5   but it may still help.  I didn't mean to say that you

6   shouldn't pursue.  It's just that in terms of timing, it's

7   not going to happen beforehand, okay?

8          MR. HASSI:  Okay.  We will keep that in mind in

9   terms of whether we file or don't file, Your Honor.

10          THE COURT:  An updated witness list --

11          MR. HASSI:  Witness list, and I think taking into

12   account what Your Honor has already said this morning, we

13   have this week to sort of work that out and try to provide

14   each other with clear indications of who will actually be

15   called to testify live at the hearing versus, for example,

16   being submitted by deposition testimony.  So that's

17   scheduled to happen on Friday.

18          Some of these changes, for example, paragraph 23,

19   these were made previously.  In terms of the briefing

20   schedule, we are just annotating them here.  Our brief and

21   reply will be due on September 30th.  We propose to exchange

22   exhibit lists, copies of exhibits and deposition

23   designations, instead of on the 30th, on October 2nd, so

24   moving that back by a couple of days.

25          Paragraph 25 goes to oppositions to Daubert

1    motions.

2         Paragraph 26, we propose to exchange objections

3    instead of on -- to exhibits and counter deposition

4    designations, instead of on October 3rd, on October 9th.

5    And then we have reply briefs on any Daubert motions

6    scheduled for October 9th.

7         In the post trial briefing -- in paragraph 31, we

8    corrected the hearing dates and times.  And then for the

9    post trial briefing, what we would propose to do is, since

10   the trial will continue into that Monday, instead of having

11   the findings of fact due that Friday, we've pushed them to

12   the following Monday.  And then the reply findings of fact,

13   instead of October 30th, to November 1st.

14        So those are the proposed changes.  As I

15   mentioned, they are agreed to by all parties.

16        THE COURT:  Sounds good to me.

17        MR. HASSI:  Okay.

18        THE COURT:  I think that is a reasonable schedule,

19   and if it gives you more time to get everything prepared, so

20   much the better.

21        MR. HASSI:  The parties will submit a proposed

22   ordered this afternoon.

23        THE COURT:  Great.  Let me ask you your opinion.

24   Do you think there is going to be any problem with exhibits?

25        MR. HASSI:  I hope not, Your Honor.  I think for

1  the most part these are going to be business documents out

2  of the companies' files and/or third parties' file, so I

3  hope not.

4          THE COURT:  Good.

5          MR. HASSI:  I understand with Your Honor's

6  schedule -- we've already talked about the fact that we

7  really need to work this out given when the hearing starts

8  and we don't have -- that this is our opportunity for

9  pretrial, and so we'll try to resolve that as much as

10 possible.

11         THE COURT:  Okay.  Let me make one suggestion

12 because I've found that's often where the best intentions

13 can flounder.

14         If you are using the demonstrative exhibits,

15 charts, things like that with your experts, and you might

16 because they probably would be helpful to the Court -- if

17 you're not using -- I say charts, and that's a --

18         MR. HASSI:  We hope they will be helpful, Your

19 Honor.

20         THE COURT:  -- that's a give-away of my

21 generation.  If you're using something that you're going to

22 put on the computer since nobody makes charts anymore, show

23 it to the other side so that they don't see it for the first

24 time the morning of and then say, "No, no, that's

25 inaccurate.  Can you make a change?"  Since it's usually

1    very difficult to make a change at the last minute, include

2    those as exhibits that you talk about, okay, so that --

3          MR. HASSI:  Okay.

4          THE COURT:  It's just a matter of time, you know.

5    Do you want to waste time saying, no, that should be this

6    percentage and not that percentage?

7          MR. HASSI:  Okay.

8          THE COURT:  Just a word of advice.

9          MR. HASSI:  Okay.

10         THE COURT:  It sounds like you have anticipated

11   pretty much everything.  Is there anything else we need to

12   talk about?

13         MR. HASSI:  There are some housekeeping matters

14   that I think we would like to address.  There is also one, I

15   think, fairly significant substantive matter that we wanted

16   to raise with Your Honor as well.  I can do those in either

17   order.  The substantive matter may be, in some respect, the

18   elephant in the room, and so why don't I do that first?

19         And that is, if Your Honor has read Ardgh's brief

20   that was filed last week, there's an 11th hour suggestion in

21   that brief that they're going to propose a remedy here, to

22   sell off four glass plants.  That's news to us.  It's news

23   that comes after the close of fact discovery.  It comes

24   after our expert reports were in.  It comes after our briefs

25   were in.

1        Now, Ardagh has known for months that the Federal

2   Trade Commission has concerns about this transaction.

3   Indeed, they understood that there were antitrust concerns

4   when they entered into the transaction.

5        They decided not to address those concerns when

6   they were in the investigatory stage.  They decided not to

7   address those concerns when they came before the Commission,

8   and they decided not to address them in a timely fashion so

9   that we could take fact discovery on that.

10       What they now propose to do is put these plans,

11  hopes, wants, intentions in front of the Court at trial with

12  no discovery whatsoever, and to ask you to evaluate that

13  remedy without us having the opportunity to evaluate it,

14  without us having the opportunity to take discovery on it,

15  and without us having the opportunity to give Your Honor our

16  views on whether that remedy is sufficient.  Clearly, at

17  this point it isn't.  I mean, at this point it's just an

18  intention to sell.

19       They haven't identified a buyer.  They haven't

20  identified how much these are being sold for.  They haven't

21  given us a chance to evaluate what they're proposing to do,

22  is to sell four plants, two each from two of the companies.

23  And they say, "Well, that will form a business that will

24  restore competition in this market."

25       We don't know if those four plants can be combined

PX0009-014

1   into a business, and so there are a lot of very serious

2   questions we have about that.  And we don't think that he

3   gamesmanship that's being played here by waiting until the

4   11th hour should be addressed at this hearing.  We don't

5   think that that evidence should come in without us having a

6   chance to have had discovery, and without us having had a

7   chance to evaluate it, and, frankly, until the facts are

8   jelled, if you will.  I mean, there's not an agreement for

9   sale here.

10          The parties cite in their briefs three cases in

11  which remedies have been litigated before.  The first of

12  those, Arch Coal, was a case that the FTC brought.  In fact,

13  it was Ms. Moscatelli's shop that brought it.  In that case,

14  the changes to the proposed transaction were two months

15  before the case was first filed by the FTC.  So they had a

16  chance to address it in discovery, and they had a chance to

17  consider it, and the Commission had a chance.  When I say

18  the "Commission," I mean the commissioners had a chance to

19  evaluate it and vote on it.  That hasn't happened here.

20          They cite Franklin Electric.  That's a case

21  involving the DOJ.  In Franklin Electric, they changed the

22  joint venture one day after the DOJ filed.  Again, well

23  before the -- I mean, the discovery period hadn't even

24  started yet, and so the parties had a chance to address it

25  and address it in discovery.

PX0009-015

1          The final case they cite is Libby, and in Libby

2    that was the latest of the three.  But in Libby, it was one

3    month into -- one month after the complaint was filed they

4    made changes.  And when I say "made changes," it's not like

5    here where they're saying, "Gee, we're going to sell these

6    four plants."

7          They said, "Here's what we're going to do.  Here's

8    the modified agreement.  Here's who's involved," and the

9    parties had a chance to vet that in discovery.  Here what

10   they're saying is --

11         THE COURT:  Let me ask you something.

12         MR. HASSI:  Yes, Your Honor.

13         THE COURT:  What are you asking the Court to do?

14   Are you asking the Court to just not allow testimony on this

15   at all?

16         MR. HASSI:  Yes, Your Honor.  We're asking -- we

17   can do this as a motion in limine, but we don't think that

18   evidence of this 11th hour proposal -- it comes after fact

19   discovery -- should be heard in these proceedings.

20         THE COURT:  All right.  Let me -- let me play out

21   a scenario here, okay?

22         MR. HASSI:  Yes, Your Honor.

23         THE COURT:  It is in the Court's interest not to

24   render advisory opinions or opinions that are going to be

25   moot in about a day or two after I render it.  Let's say I

1    grant whatever motion, whatever form you're going to bring a

2    motion in, and I exclude all that evidence.  Then I give you

3    a ruling one way or the other.  Obviously if I rule against

4    the FTC, then the whole thing is moot, but if I rule for the

5    FTC, then I presume they would come back with the excluded

6    information and bring the whole thing all over again, right?

7            MR. HASSI:  Well, Your Honor, I think in light of

8    the fact that this is a 13(B) proceeding, and that what

9    we're asking Your Honor to do here is to preserve the status

10   quo pending the trial, before the FTC and before the

11   Commission, I'm not sure that that's correct.  In other

12   words, if there is a remedy to be fashioned, the Commission

13   ought to have a chance to fashion that remedy.

14           What we're asking Your Honor to do is to decide

15   are there serious and substantial questions going to this

16   transaction such that I should require the parties -- that

17   Your Honor should require the parties to preserve the status

18   quo, and that's all we're asking here.  Whether that remedy,

19   the sale of those four plants and the possible buyer that

20   they may or may not come up with -- and they're just

21   starting to talk to buyers -- whether that remedy suffices

22   can be addressed, if necessary, in a merits trial.  And I

23   think that depends on whether they get to a deal and whether

24   they get to a buyer, et cetera.  But we don't think that

25   these proceedings should be held up, or that Your Honor

1    should be deciding -- with no evidence, frankly.  I mean, if

2    you look at their brief, there's not a footnote, there's not

3    a citation to any evidence.  This is just they're going to

4    put somebody on the stand who says either:  "Here's what we

5    intend to do," or, "Here's what we've done in the weeks

6    since discovery has closed."  We think we're severely

7    prejudiced by that, Your Honor.

8            THE COURT:  Okay.  Did you want to address --

9    well, I'll tell you what, let's address this now from the

10   other side, and then we'll go into your housekeeping

11   matters.

12           MR. HASSI:  Very well, Your Honor.

13           THE COURT:  Okay.

14           MR. SCHWED:  Thank you, Your Honor.  Richard

15   Schwed for Ardagh Group.

16           I think maybe I can start by backing up and

17   explaining the revised transaction that we've proposed, and

18   this isn't something that's a gambit.  It's not an 11th hour

19   strategy.  Basically, since this case was filed, we've been

20   trying to come up with the FTC to a consensual arrangement.

21   We have not been able to do that.  We've discussed a number

22   plants.  We have not been able to reach an agreement.  We

23   finally decided that there was not going to be time or

24   ability to get that done, and that we would unilaterally

25   agree to divest four of the plants that were going to be

1    part of the combined entity, two that we already own and two

2    that we're purchasing.

3           This is relevant -- I'm not sure how much Your

4    Honor -- since you've been recently reassigned to this

5    case -- has gotten into the -- what the case is all about,

6    but essentially the fundamental question in this case is

7    whether glass bottles compete with other forms of packaging,

8    and, in particular, the most important is cans for beer and

9    plastics for spirits, alcohol.  There is a fundamental

10   question that that brings up which is sort of the starting

11   point of all cases, which is what is the product market.

12          We strongly believe that we can win this on the

13   definition of the product market.  That's the exact same

14   case that -- the exact same product market issue that was

15   addressed by the Supreme Court in Continental Can 50 years

16   ago, and by this court about 25 years ago in the O-I

17   Brockway case and by the FTC, where both courts have said

18   that cans and glass are in the same product market.  It is a

19   rare case when you have a merger case and there's a relevant

20   product market, and there's a Supreme Court case and a

21   binding case that have said that the product market that the

22   FTC is claiming is not the right product market, and, in

23   fact, the FTC Commission itself has found that that is not

24   the right product market.

25          Now, the revised transaction we are proposing is

1    one that addresses the question:  Well, what if Your Honor

2    does not agree with us on the product market?  Because it is

3    our view that there is not going to be a diminution in

4    competition with this transaction even in the revised

5    product market, even if their product market is correct.

6    But out of an abundance of caution, what we have done is

7    agreed to sell these four plants which we believe

8    100 percent addresses the concerns that have been raised by

9    the Commission.

10           There are three plants that make beer.  Those

11   plants combined have -- their beer sales that they have made

12   in this past year are 110 percent of what Ardgh's beer sales

13   were itself.  So in other words, we're selling more than our

14   own beer business effectively.  And so the combined entity

15   will have less beer business than just one of the two -- the

16   bigger of the two entities had before the transaction.

17           THE COURT:  Are you going to do that even if the

18   Court rules with you?

19           MR. SCHWED:  Well, we are going to enter into a

20   definitive purchase agreement because we recognize time is

21   short, and we don't have time, necessarily, to wait for the

22   Court to issue a ruling, and, then, if things don't go our

23   way, to circle back and then complete this transaction and

24   get this deal closed by the drop-dead date of mid-January.

25   So what we have decided to do in order to make sure that

1    this can all be done in time, is to enter into binding

2    agreements that are -- obviously they have to be contingent

3    on the transaction closing because we can't sell what we

4    don't own, but the binding agreements -- a single binding

5    agreement with them to buy the four plants, and then

6    immediately upon closing the transaction, those four plants

7    will be transferred to the buyer.

8              THE COURT:  So if I rule in your favor about the

9    market question, you will still go ahead with this plan?

10             MR. SCHWED:  We will still go ahead with it.

11   That's the situation we've agreed to be in.

12             THE COURT:  Don't you think that the FTC should

13   get a crack at what you're planning?  You're telling me it's

14   definitive.  What I heard from counsel was that they don't

15   even know that you have a binding contract.

16             MR. SCHWED:  Well we don't yet have a binding

17   contract.  We're in negotiations.  They've known for --

18   they've known for two weeks now that we are -- the identity

19   of the four plants we are planning to sell.  Since then,

20   they have deposed our CEO and asked him extensively about

21   the plans to sell the four plants.  They have deposed our

22   chairman who is running the process and asked him

23   extensively about the plans to sell the plants.  It was the

24   primary focus of the deposition.  There is nothing else that

25   they have identified to us that they need that prevents them

1     from -- they're saying that we want try this without giving

2     them a chance to put on their case about it, but they've

3     known about -- they have detailed information about each of

4     these four plants that they've had for a long time.

5            THE COURT:  Two weeks?

6            MR. SCHWED:  No.  I'm saying the detailed

7     information about the four plants they've had for months.

8     In other words, we've given them plant by plant detail in

9     the whole discovery process, even before the lawsuit was

10     filed.  They have had plant by plant detail, and they have

11     known about the exact contours of the transaction, the exact

12     four plants, for two weeks.

13            Now, two weeks may not sound like a lot, but that

14     ends up putting them about five weeks before the hearing,

15     and a number of the cases that are cited by both sides in

16     this were decided in the entire case, from the date it was

17     filed until the date of the hearing, was between five and

18     eight weeks.  So it's not -- in the context of maybe a

19     five-year litigation, something that's five weeks before the

20     actual hearing date may sound like the 11th hour, but in the

21     context of lawsuits that often take five, six, seven, eight

22     weeks, five weeks before the hearing gives them plenty of

23     time to address what is really only one sub-issue of the

24     case.  It a doesn't affect the product market analysis, it

25     doesn't affect the geographic market analysis, it only

1   affects the question of the harm to competition and --

2           THE COURT:  Only?

3           MR. SCHWED:  I'm sorry?

4           THE COURT:  Only affects the harm to --

5           MR. SCHWED:  Well, just in terms of the amount of

6   analysis.  In other words, what I'm saying, Your Honor, is

7   that there have been entire cases, from product market

8   through the end of the case, that have been tried in six

9   weeks.

10          THE COURT:  Let me ask you something.  Do you

11  think there is a chance that if the commissioners had your

12  current plan in front of them they might come out with a

13  different result?

14          MR. SCHWED:  We don't know.  The FTC, frankly, has

15  gone radio silent on us.  We had originally proposed this as

16  a settlement and never got an answer, so we don't know what

17  the Commission would do.  Frankly, I wish we could explore

18  that, but the problem we have here is we have a mid-January

19  drop-dead date.  This transaction will terminate, and our

20  ability to purchase the company will end by mid-January.  So

21  we don't have the luxury of time to explore that question.

22          THE COURT:  Okay.  Let me hear from --

23          MR. SCHWED:  If I may just add one more point?

24          THE COURT:  Yes.

25          MR. SCHWED:  The arguments Mr. Hassi made are the

1    exact same arguments that were made in Arch Coal, which was

2    they're trying to fashion their own remedy.  They're trying

3    to take the job of the Commission by deciding which plants

4    get sold.  They can't change the transaction.  And this

5    Court said, "I'm not going to get involved in a fiction.

6    I'm not going to hear a case about a transaction that is no

7    longer the transaction that's being proposed."

8              Thank you.

9              THE COURT:  Thank you.  Wait, that's what the

10   Court said in Arch Coal?

11             MR. SCHWED:  In Arch Coal, yes, Your Honor.

12             THE COURT:  Okay.

13             MR. SCHWED:  Thank you, Your Honor.

14             THE COURT:  Let me hear back from Mr. Hassi.

15             MR. HASSI:  Your Honor, I will start with Arch

16   Coal and some of the differences.

17             The difference here for Arch Coal is, the Arch

18   Coal court found it was integral to the deal, and it was

19   done in good faith.

20             And the Libby court -- it cited the Libby court.

21   In its footnote 27 of the Libby court opinion, they talk

22   about the good faith of the parties in an effort to resolve

23   the FTC's concerns.

24             Dropping these facts on us the night before the

25   CEO's deposition, which is already being taken after the

1    close of discovery, that's not in good faith, Your Honor.

2    This isn't a good-faith effort to resolve this.

3           In terms of the questions that the commissioners

4    would have, if -- our website has a whole section on

5    divestitures and what a party has to do to try and satisfy

6    the Commission on divestitures, and one of the main issues

7    is, who is the buyer?  How are they funded?  Can they make

8    this a go?

9           And then we talked to customers, and I will tell

10   you -- this was announced on Friday to the public -- we've

11   been hearing from customers already.  They don't like this.

12   So we haven't had a chance to vet that, and the Commission

13   hasn't had a chance to vet that.

14          THE COURT:  All right.  I'm going to ask Mr.

15   Schwed the same question.  I will probably get a different

16   answer, but I am concerned.

17          Mr. Hassi, do you believe there is still some

18   benefit to be gained from -- let's say I exclude everything

19   about the sale to -- the four different sales or the

20   divestiture, whatever you would call it -- I exclude that

21   and I don't hear any testimony on that, which is quite

22   likely what I'm going to do because it doesn't sound like

23   you are prepared to respond to it.  If I did that, is there

24   anything to be gained from going ahead with the rest of the

25   hearing and getting a ruling from me on the market, the

1    geography, the whole thing?

2          MR. HASSI:  There absolutely is, Your Honor.

3          THE COURT:  Okay.

4          MR. HASSI:  We think the product market issue is

5    an important one here.  We don't think it's a close call,

6    but we do think if Your Honor takes a hard look at that, it

7    would be helpful to the parties.

8          THE COURT:  Okay.

9          What you think, Mr. Schwed?

10         MR. SCHWED:  Your Honor, as a --

11         THE COURT:  You had better come to the podium.

12         MR. SCHWED:  Your Honor, we certainly don't want

13   to put off the hearing because, as I've mentioned, we're

14   basically running up against the clock.  From the date of

15   the hearing until the date that this deal must close, we

16   have roughly three months, a little less from the last day

17   of hearings.

18         We recognize that the parties are going to spend a

19   week or so -- a little bit more -- submitting briefs, and

20   then Your Honor has to decide weighty issues and will

21   take -- you know, will need some time in order to do that.

22   These are not things that can be decided on the spot

23   overnight.  So we recognize that all of this is going to

24   take time, and, then, potentially, whichever side loses is

25   going to try to take an emergency appeal up to the D.C.

1    Circuit.  So we don't have the luxury of putting this off.

2    I guess, in an ideal world, we would say let's delay this

3    hearing, get some more time.  But our view is that whatever

4    needs to be done -- so the first answer is, yes, we need to

5    have a hearing.  And then so the question is, what can be

6    covered in that hearing.  Our view is that, whatever needs

7    to be done in order to have the FTC probe this deal can be

8    done in three weeks.

9            All of this -- in the CCC case, which is the most

10   recent case that was before this court, the entire discovery

11   record took about three weeks, and that was over Christmas.

12   So our view is, there's a minimal amount that needs to be

13   done in order to vet this process.  They are in contact with

14   the customers.  They can talk to the customers, and there's

15   no reason that this can't be fully teed up by this -- by the

16   start of the hearing.

17           THE COURT:  Let me talk to the side that's going

18   to be doing the discovery.

19           Speaking with all due speed -- and don't tell me

20   it's going to take six months because if you tell me it is

21   going to take six months, I won't believe you -- how long

22   would you need to do the discovery on the four transactions

23   they are talking about?

24           MR. HASSI:  Your Honor, I'm not sure I can answer

25   that question and the reason is, is because a very important

1   part of what the FTC wants to consider here -- and, again,

2   it's public, it's on our website -- is the identity of the

3   buyer.  Who is going to run these plants?  How are these

4   four plants going to fit together?  Who is going to manage

5   them?  How well-capitalized are they?

6            THE COURT:  Well, they have binding contracts

7   ready to go, so they could tell you today.  Probably as soon

8   as I get out of here, they'll tell you who the buyers are.

9            Right?  Am I right, Mr. Schwed?

10           MR. SCHWED:  No.  We are still negotiating with

11  buyers.  We have identified to the FTC who will be managing

12  the plants.  Since this is an open courtroom, I won't say

13  who it is, but we have identified to the FTC the type of

14  buyer, that it is somebody who has got industrial experience

15  and exactly who will be running the plants.

16           THE COURT:  No, no.  But you haven't told them who

17  the buyers are?  Please get to the microphone.

18           MR. SCHWED:  Yes, Your Honor.  We're still

19  negotiating with two to three buyers.

20           THE COURT:  Then they can't do their discovery in

21  three weeks.  You don't even have a definitive name for them

22  to do discovery from or ask about.  That's not reasonable,

23  is it?

24           MR. SCHWED:  Well, Your Honor, I think if you look

25  at what discovery needs to be done, I think, frankly, the

1  identity of the buyer is a bit of a red herring here in the

2  sense that the key question is:  Do the divestiture of these

3  plants satisfy their concerns about the power in the market

4  that they are claiming that Ardagh will have?  So we are now

5  saying that Ardagh is going to have a new company that has

6  less beer business than VNA had before.  It's going to have

7  a capacity in spirits that -- or it's giving away enough

8  capacity that they basically will be a competitor that

9  replaces Ardagh in the market.

10          THE COURT:  Let me tell you right now, I do not

11  believe that that can be thoroughly investigated in the

12  three weeks between now and my hearing.  I just don't see

13  it.  I just don't think the negotiations are far enough

14  along the line, and I don't think it's fair to the other

15  side to ask them to do that.

16          So given what I have heard today, I would not be

17  considering that factor in my decision.  I just do not

18  believe that you would both be in a position to present to

19  me -- I don't think the FTC would be in a position in three

20  weeks to present their side or their opinion about whether

21  this really is an adequate cure to their concern about

22  competition.

23          My sole question at this point, given that I don't

24  think I am going into -- I can't go into that.  I think it

25  would be premature and precipitous for me to even look at

PX0009-029

1  that.

2          My question to both of you is -- look, I would

3  love to have the hearing, set the days aside, sounds very

4  interesting.  I've got nothing else to do those three days.

5  I'm all yours.  On the other hand, as I sort of led into

6  this, if this is going possibly to be a remedy that would

7  resolve the situation, why am I going through all this about

8  market, and geography, and all of this if, indeed, the

9  divestiture would solve the problem of the competitive

10  concerns that the FTC has?  As I say, it is an interesting

11  question, and I'm sure I'll enjoy good briefing, but, you

12  know, I do have other cases that I probably could be

13  attending to in those three days.

14          I'm just concerned that we're going to go through

15  all of this, you'll get a ruling from me, and then you are

16  going to have to go through this anyway.  You are going to

17  have to go through it.  I mean, you already have a plan that

18  you think, at least based on what I have heard today, would

19  satisfy there concerns.  Why not give them a crack at taking

20  a look at it?

21          MR. SCHWED:  Well, Your Honor, we would be more

22  than happy to have the Commission agree that this satisfies

23  their concerns and to make this all go away.  Obviously,

24  we're willing to do that deal.  We've come out publicly and

25  said it.  We've said it to this Court.

1          The problem is that it's been a good two weeks

2    since we proposed those four plants to the FTC staff, and we

3    have not heard one way or the other whether they view those

4    four plants as being sufficient.  And so we just can't,

5    frankly -- in my client's interest, I can't just sit back

6    and say we're going to wait forever for the FTC to decide

7    whether this is enough because their time is going to come

8    and go.

9          THE COURT:  Okay.

10         Mr. Hassi, let me ask you this.

11         MR. HASSI:  Yes, Your Honor.

12         THE COURT:  I'm not buying into the fact that two

13   weeks is enough for you to give a decision about whether the

14   FTC is satisfied or not satisfied.  I think I can tell what

15   your answer is going to be, which is that you need more

16   information, you need to do some discovery, and you need to

17   know more facts surrounding the divestiture plans.

18         What do you need and how long would it take you to

19   come up with a list of what you need for them to give it to

20   you?  I mean, you can't just sit there and say, no, we're

21   going to go ahead with this hearing because we just heard

22   about this yesterday.  I understand your frustration and

23   your concern, but let's move on from the fact that you just

24   heard about it.  I've already told you I'm not going to go

25   into this at the hearing, so you're safe on that point,

1    okay?

2           MR. HASSI:  Yes, Your Honor.

3           THE COURT:  So now you can just sit back and say,

4    "Okay, how long, what do I need, and how will that timing

5    mesh with the hearing?"

6           I have already said I don't think you can do

7    everything in three weeks.  I don't think you can.  But if

8    you made a list and they gave you -- I mean, they really

9    want to accelerate this, and so it's in their interest to

10   give accelerated discovery.  If you give them a list of what

11   you need, I think what Mr. Schwed is saying is that he will

12   do everything to get you the information that you need.

13   Now, that doesn't mean you can look at the information, get

14   the commissioners to look at it, do the whole thing.  But at

15   least you could get the information.

16          Can you guys work on that in the three weeks and

17   give me an idea of timing and how it would mesh with the

18   hearing?  I mean, if you're talking about a timing where

19   another week or two would make a difference, that is

20   important for me to know because then we could have a

21   hearing on the whole thing, or maybe have no hearing at all

22   is what I am saying.

23          I'm reluctant to put the hearing over because I

24   have a tight schedule and these are your three days.  On the

25   other hand, I'm also reluctant to have a hearing -- I

1    suppose I could just have the hearing, listen to everything,

2    not give you a decision, and then you can tell me that it

3    was a nice three days but we've worked it out.  I don't mind

4    that, but if putting the hearing over, if it were at all

5    possible -- I'll look at my calendar.  What do you think?

6    How much more time would you need?  I understand three weeks

7    isn't enough, and I understand that two weeks wasn't enough,

8    but what are we looking at?

9         MR. HASSI:  I think the problem is the starting

10   date, and that is, we need to start from a definitive

11   agreement, an identified buyer and a contract with that

12   buyer.  There are a ton of questions.  You know, I'm tempted

13   to bring Dan Ducore up.  He's the head of our Compliance

14   Section, and he's the one -- he and his team vet these

15   things.  So if you want to have an extended discussion about

16   that, I can ask Dan to come up.

17        But there are a lot of unanswered questions here

18   that can't be answered until we've got a contract.  I mean,

19   the idea that they've got somebody identified to manage the

20   plants but they don't have a buyer yet, what makes anybody

21   think that that buyer is going to accept that manager?

22   Those questions have to be answered first, and then we can

23   look at the discovery.  Whether it is a matter of weeks or

24   months, I don't know, but we need to have a definitive

25   agreement to work from.  We need to know what it is we're

1    shooting at.

2         THE COURT:  Mr. Schwed, what are we dealing with

3    in terms of a definitive agreement here?

4         MR. SCHWED:  We are working diligently to

5    negotiate.  I mean, let me just make this one point.  The

6    management team, or the lead manager -- it's not somebody

7    we're imposing on the buyer, it's somebody who the buyer

8    wants to work with and that person wants to work with the

9    buyer.  This isn't just some fantasy.

10        But my understanding is that the FTC fashions

11   consent decrees all the time where there is -- and

12   negotiates consent decrees without there being a definitive

13   agreement.  They don't go up to somebody who is considering

14   divesting some plants and say, "I'm not even going to

15   consider your divestiture proposal until you have a

16   definitive agreement," and they're supposed to sign a

17   definitive agreement and then they hand it over, and then

18   FTC says, "No, this isn't a good plan.  I'd rather have it

19   be different."

20        They are able to when they want to, when it's in

21   their interest, they're able to figure out what is good and

22   bad for competition without a definitive agreement.  When

23   they don't want to, all of a sudden they need a definitive

24   agreement.  So I think it's a little bit of an unfair

25   standard to say they can't even start thinking about this

1    without a definitive agreement.  They know what the plants

2    are.  They can make an assumption that it will be sold to a

3    well-capitalized buyer who is reputable.  And I think the --

4    the analysis doesn't really change based on which

5    well-capitalized, reputable person, who is not in the

6    industry, has no competitive concerns -- it's not

7    somebody -- it's somebody with industrial experience, but

8    not somebody who, you know, is in the rigid packaging

9    industry, owns a can company or anything like that.  So they

10   can assess this --

11           THE COURT:  Well, you have already disclosed a lot

12   about the buyer.  You may not have given the name, but you

13   have already given them a lot to work with.

14           What I am concerned about is -- I will tell you

15   what -- I mean, obviously, you guys are going back and forth

16   in what is turning out to be a discovery dispute.  I

17   recognize one when I see it.  I think the most I can do at

18   this point is say we will go ahead with the hearing as

19   scheduled.  It will concern the issues that I understood it

20   to concern before I came out here today, i.e., we will not

21   be discussing any divestiture of plants that one side sort

22   of knows about and the other side doesn't.  It's not going

23   to be fruitful for me to hear any testimony on that.

24           What I would urge you to do, and I'm not sure my

25   sitting up here and going through this any further today

1    will be a help to you, but what I would urge you to do -- if

2    necessary, I would -- if there were a way I could order you

3    to do it, I would -- is to sit down and talk about this in

4    the coming three weeks.  I think the FTC needs to express a

5    willingness to examine the plans.  I think the defendants

6    need an opportunity to put those plans in as much detail as

7    they can so that they are presenting something -- I use the

8    word "definitive" in a sort of sliding scale here -- but

9    enough for them to be able to do some evaluating of what

10   you're suggesting.  I think it's very important that you

11   discuss this because you are going to be spending three

12   days, and you may get a ruling that turns out to be an

13   advisory opinion because, in fact, this is all going to go

14   away if you like the divestiture plans.

15          I'm going to leave the hearing as scheduled.  If

16   the FTC hears enough to make them think that a week or two

17   would help, then you should call my chambers and see what

18   the alternatives are.

19          I'm trying to be realistic in the fact that you

20   have witnesses scheduled, many of whom, you know, you have

21   prepared for these three days.  I don't know how flexible

22   these people are.  I realized there is an end line to this

23   whole thing, but, frankly, it would do you more good than

24   harm if the end result were that the whole thing went away

25   and the divestiture plan was approved, and then the January

1  date would be fine.  But right now I am going to leave the

2  hearing date as scheduled, but I made a ruling on what we

3  are going to hear at the hearing date, and I really urge

4  counsel to -- I mean, I don't know if I need to set a date

5  for you both -- both -- everybody else here -- to meet.  I

6  don't think I need to do that.  You all know what is at

7  stake here.  I just urge you to get together, talk about the

8  new plan.

9        Forget about the fact that it was sprung on you at

10  the last moment, Mr. Hassi.  Forget -- I mean, I realize to

11  a litigator that's a bad thing, but right now you've got

12  your hearing date and you've got your limited ruling.  Now

13  is the time to switch gears and see if this thing -- if

14  there is a chance this can go away.

15        If you are working something out, the first call

16  you need to make is to my chambers so that we don't spend

17  time on this, okay?  But otherwise, I will see you here in a

18  month, or three weeks, or whatever we've got.

19        Now, housekeeping.

20        MR. HASSI:  Housekeeping, and, Your Honor, I

21  didn't mean to suggest that -- I mean, this was sprung on us

22  at the last minute.  We have had constructive discussions

23  and we will continue to do that.

24        THE COURT:  Okay.

25        MR. HASSI:  The way this was approached, we think,

1   was the wrong way to approach it.

2          THE COURT:  Okay.

3          MR. HASSI:  But housekeeping issues.  The first

4   question I had, Your Honor mentioned concerns before you

5   came out here this morning, that we have a limited amount of

6   time before Your Honor.  If there are specific issues you

7   would like us to address -- I mean, it's true we've lined up

8   certain witnesses to come, and we have our own conception of

9   what we think is important for you to hear.  If there are

10  specific questions you want answered, or things you want

11  addressed, we would be happy to try and address those in the

12  limited time we have before Your Honor.

13         THE COURT:  I think you both hit on the issues

14  that are going to be the important ones, and that's market,

15  the production market and that geographic market, though I

16  think one is probably of more concern than the other.  I

17  think it is what -- what effect aluminum cans have on this,

18  and plastic.

19         MR. HASSI:  We thought that might be one of your

20  questions, your Honor.

21             In terms of the hearing dates themselves, do you

22  want openings and closings, or do you want to jump right in

23  with testimony?  We didn't know if you had a preference.  We

24  think it would be helpful, before putting a witness on the

25  stand, to give you sort of an overview of what we're going

1    to try to present over the two-and-a-half days.

2           THE COURT:  I think it be would very helpful, but

3    how much time do you need?  Half-hour each, would that do

4    it?

5           MR. HASSI:  Could we say 45 minutes?

6           THE COURT:  Forty-five minutes.  Well, let me ask

7    you, could you do that in writing, or do you think it would

8    be more helpful to -- would you be using demonstratives?

9           MR. HASSI:  We would be using demonstratives, and

10   I think it would be more helpful to walk through some

11   exhibits.

12          THE COURT:  Okay, 45 minutes.

13          MR. HASSI:  Forty-five minutes is fine.  Thank

14   you, Your Honor.

15          In terms of closing, sometimes those are done at

16   the end of the hearing dates, and sometimes they are done

17   after the findings of fact.  Our end, do you have a --

18          THE COURT:  Why don't we wait and I'll let you

19   know.  Why don't we wait.  First of all, let's see the

20   timing; and, second of all, it may be useful after I get the

21   findings of fact to have the closings.

22          MR. HASSI:  Okay.

23          THE COURT:  All right.

24          MR. HASSI:  One of the questions we had was the

25   courtroom technology.  I assume we will be in this courtroom

1   and there's somebody that we can liaise with in your absence

2   to --

3            THE COURT:  You're looking at her right now.

4            MR. HASSI:  Okay.  We'll be in touch with her.

5            THE COURT:  She will help you, and both of you

6   should make an appointment to come see her and arrange

7   things.

8            MR. HASSI:  We will do that, Your Honor.

9            Confidentiality issues, there -- because this is

10  dealing with on-going business, customers, contracts,

11  prices -- there are a lot -- we will try to do as much as we

12  can to sort of sanitize the presentation so that we're not

13  discussing that kind of thing, but I'm not certain that we

14  can remove all of it.  Does Your Honor have a preference in

15  terms of the way you handle information that parties, and in

16  particular third parties witnesses, care about maintaining

17  confidentiality over?

18           THE COURT:  Well, testimony is a little more

19  difficult.  I don't see a problem with exhibits because you

20  can use sanitized exhibits here, and then have a separate

21  set that you give to either the clerk on my law clerk that

22  you want us to see in chambers.  Testimony, we'll have to

23  play it as it goes.  We'll see how we can handle that.

24           MR. HASSI:  Yes, Your Honor.

25           THE COURT:  I don't know how much testimony there

1    is going to be that really will be touching on this.  I

2    can't tell yet, but you will let me know and we will work it

3    out.

4              MR. HASSI:  Okay, Your Honor.  Then, finally, if

5    Your Honor has a preference in terms of filings, things on

6    paper, things on three-ring binders, that sort of thing.  If

7    Your Honor wants to let us know, we'll --

8              THE COURT:  Three-ring binders is my preference

9    because I still like paper.

10             MR. HASSI:  I do, too, Your Honor.

11             THE COURT:  And if you could give us a set each,

12   you know, plaintiff's set and defendant's set, and I don't

13   know if the defendants are going to have a joint set.

14             I would assume you will have one set, right?

15             MR. SCHWED:  Yes, Your Honor.

16             THE COURT:  That really will keep things a lot

17   more simple.  So let's just call it the defendants' set, and

18   just number yours consecutively, and plaintiff's set.  I

19   think that's probably the easiest way.  Just have them for

20   me and I can flip through them.  Or if they're going to be

21   on here, it may be easier.

22             MR. HASSI:  We'll try to do a lot of it

23   electronically, but if -- I was also thinking of exhibits to

24   the brief.  I know we provided a three-ring binder, but that

25   was -- we had asked Judge Collyer what she wanted, and I

1  just want to make sure that we are providing what is most

2  useful to you.

3          THE COURT:  Okay.

4          MR. HASSI:  Those are all of the questions I had,

5  your Honor.  Unless you have anything else --

6          THE COURT:  Did you have any housekeeping matters?

7          MR. SCHWED:  Only one quick thing, Your Honor.

8  I'm just trying to get a -- so we can plan out our

9  witnesses, just how long is a trial day, just in terms of

10  what time you start, what time you end?

11          THE COURT:  I knew you were going to ask me that.

12  I'm trying to -- I'm looking at the person on whom it is the

13  hardest, which is our court reporter.

14          I am perfectly willing to start out -- well, what

15  time are we starting on Thursday?  Is it 2:00?

16          THE DEPUTY CLERK:  Yes, Your Honor.

17          THE COURT:  So let's go 2:00 to 5:00 on Thursday.

18  Let's start with 9:00 to 4:30 on Friday.  Monday would be, I

19  guess, 9:00 to 4:30, too.  I would like to take an hour and

20  a-half for lunch, but that's not really necessary.  You

21  know, I will be asking you all how we're doing.  We can cut

22  the lunch hour to an hour.  I'm just thinking back to my

23  trial days.  It's easy for me to set up something like, you

24  know, 9:00 to 5:00 and an hour for lunch and, you know, 15

25  minutes.  You guys are the ones who have to go back and do

1    some work in the evenings, and maybe even need a lunch hour

2    to talk -- a longer lunch hour to talk to your witnesses and

3    things.  So you tell me, would you prefer an hour and a-half

4    for lunch?

5            MR. SCHWED:  Personally, I think, given that we

6    are on a very compressed schedule, I would suggest that we

7    assume an hour, but we can see how the time is going as we

8    progress.

9            THE COURT:  Okay.

10           MR. HASSI:  I agree.

11           MR. SCHWED:  But this is very helpful, at least,

12   just to give us -- as Your Honor mentioned, this can be

13   flexible, but this at least gives us some guideposts for how

14   much time we have.

15           THE COURT:  Yes.  I mean, we can stretch from 4:30

16   to 5:00, and we can -- but let's start out thinking that

17   we'll end at 4:30.  We'll start at 9:00 and we'll have an

18   hour for lunch.

19           Does that fit?  I mean, do you think you can fit

20   within that?  But the first day we will go from 2:00 to 5:00

21   because we're starting late, okay?

22           MR. HASSI:  Yes, Your Honor.

23           THE COURT:  Okay.  See you back here unless, of

24   course, you work it all out.  Just don't work it out after I

25   give you a decision and go through all that trouble.  Work

44

1    it out sometime in between, okay?

2              MR. SCHWED:  Thank you, Your Honor.

3              MR. HASSI:  Thank you, Your Honor.

4          **(Whereupon, the proceedings in the above-entitled**

5    **matter were concluded at 10:59 a.m.)**

6

7

8                    **CERTIFICATE OF REPORTER**

9          I certify that the foregoing is a correct

10   transcript from the record of proceedings in the

11   above-entitled matter.

12

13          _____

14                    Theresa M. Sorensen, CVR-CM

15                    Official Court Reporter

16

17

18

19

20

21

22

23

24

25

**1**

100 percent [1]  20/8
1000 [1]  2/20
10019 [1]  2/20
10022 [2]  2/8 2/12
1021 [2]  1/3 3/3
10:04 [1]  1/6
10:59 [1]  44/5
110 percent [1]  20/12
11th [5]  13/20 15/4 16/18 18/18 22/20
13 [1]  17/8
13-1021 [2]  1/3 3/3
15 [1]  42/24
1st [1]  11/13

**2**

20001 [3]  1/19 2/4 2/24
20004 [1]  2/15
2013 [1]  1/6
202-326-2470 [1]  1/15
202-326-2749 [1]  1/24
202-326-3119 [1]  2/5
202-326-3703 [1]  1/19
202-354-3118 [1]  2/24
202-508-8097 [1]  2/16
202-508-8100 [1]  2/16
20580 [2]  1/14 1/23
21 [1]  7/15
212-474-1000 [1]  2/20
212-474-3700 [1]  2/21
212-848-4000 [2]  2/9 2/12
22 [1]  8/11
23 [1]  10/18
24 [1]  1/6
2470 [1]  21/15
25 [2]  10/25 19/16
26 [1]  11/2
26th [1]  7/23
27 [1]  24/21
2749 [1]  1/24
27th [1]  7/21
2:00 [3]  42/15 42/17 43/20
2nd [1]  10/23

**3**

30th [3]  10/21 10/23 11/13
31 [1]  11/7
3118 [1]  2/24
3119 [1]  2/5
333 [1]  2/23
3700 [1]  2/21
3703 [1]  1/19
374 [1]  1/14
3rd [1]  11/4

**4**

4000 [2]  2/9 2/12
45 [2]  39/5 39/12
4:30 [4]  42/18 42/19 43/15 43/17

**5**

50 [1]  19/15
599 [2]  2/8 2/11
5:00 [4]  42/17 42/24 43/16 43/20

**6**

600 [2]  1/13 1/22

601 [2]  1/18 2/3
6117 [1]  1/18
6119 [1]  1/23
6127 [1]  2/4

**8**

801 [1]  2/15
8097 [1]  2/16
8100 [1]  2/16
825 [1]  2/19

**9**

9:00 [4]  42/18 42/19 42/24 43/17
9th [2]  11/4 11/6

**A**

a-half [2]  42/20 43/3
a.m [2]  1/6 44/5
ability [3]  6/4 18/24 23/20
able [6]  6/2 18/21 18/22 34/20 34/21 36/9
about [46]
above [2]  44/4 44/11
above-entitled [2]  44/4 44/11
absence [1]  40/1
absolutely [1]  26/2
abundance [1]  20/6
accelerate [1]  32/9
accelerated [1]  32/10
accept [1]  33/21
acceptable [1]  6/6
account [1]  10/12
acquaintance [1]  5/1
Action [1]  3/3
actual [1]  22/20
actually [1]  10/14
add [1]  23/23
address [14]  3/19 9/4 13/14 14/5 14/7 14/8
  15/16 15/24 15/25 18/8 18/9 22/23 38/7
  38/11
addressed [5]  6/24 15/4 17/22 19/15 38/11
addresses [2]  20/1 20/8
adequate [1]  29/21
admitted [1]  4/4
advance [3]  4/18 4/20 9/4
advice [1]  13/8
advisory [2]  16/24 36/13
affect [2]  22/24 22/25
affects [1]  23/1 23/4
after [12]  6/25 13/23 13/24 13/24 15/22 16/3
  16/18 16/25 24/25 39/17 39/20 43/24
afternoon [1]  11/22
again [4]  6/21 15/22 17/6 28/1
against [2]  17/3 26/14
ago [2]  19/16 19/16
agoudiss [1]  2/13
agree [5]  5/4 18/25 20/2 30/22 43/10
agreed [4]  7/3 11/15 20/7 21/11
agreement [14]  15/8 16/8 18/22 20/20 21/5
  33/11 33/25 34/3 34/13 34/16 34/17 34/22
  34/24 35/1
agreements [2]  21/2 21/4
ahead [5]  21/9 21/10 25/24 31/21 35/18
al [2]  1/6 3/4
ALAN [2]  2/10 3/14
alcohol [1]  19/9
all [36]  4/3 4/13 5/23 7/3 11/15 16/15 16/20
  17/2 17/6 17/18 19/5 19/11 21/1 25/14 26/23
  27/9 27/19 30/5 30/7 30/8 30/15 30/23 32/21

33/4 34/11 34/23 36/13 37/6 39/19 39/20
  39/23 40/14 42/4 42/21 43/24 43/25
allocation [1]  6/8
allow [1]  16/14
along [5]  4/19 5/13 5/20 9/5 29/14
already [11]  6/24 10/12 12/6 19/1 24/25
  25/11 30/17 31/24 32/6 35/11 35/13
also [4]  7/7 13/14 32/25 41/23
alternatives [1]  36/18
although [1]  6/9
aluminum [1]  38/17
am [11]  4/6 4/19 6/21 25/16 28/9 29/24 30/7
  32/22 35/14 37/1 42/14
ambiance [1]  6/16
amina [1]  2/5
amount [3]  23/5 27/12 38/5
analysis [4]  22/24 22/25 23/6 35/4
and/or [1]  12/2
ANDRINOPOULOS [1]  2/2
ANGELIKE [2]  2/2 3/10
annotating [1]  10/20
announced [1]  25/10
another [1]  32/19
answer [5]  23/16 25/16 27/4 27/24 31/15
answered [3]  33/18 33/22 38/10
anticipate [1]  3/24
anticipated [1]  13/10
antitrust [1]  14/3
any [15]  4/5 4/11 4/17 6/7 8/21 9/8 9/25 11/5
  11/24 18/3 25/21 35/21 35/23 35/25 42/6
anybody [2]  9/21 33/20
anymore [1]  12/22
anything [5]  8/21 13/11 25/24 35/9 42/5
anything else [1]  13/11
anyway [2]  9/10 30/16
appeal [1]  26/25
APPEARANCES [2]  1/11 2/1
applies [1]  6/10
appointment [1]  40/6
appreciate [1]  9/19
approach [1]  38/1
approached [1]  37/25
approved [1]  36/25
Arch [7]  15/12 24/1 24/10 24/11 24/15 24/17
  24/17
ARDAGH [9]  1/6 2/7 3/4 3/13 14/1 18/15
  29/4 29/5 29/9
Ardgh's [2]  13/19 20/12
are [84]
arguments [3]  4/9 23/25 24/1
arrange [1]  40/6
arrangement [1]  18/20
as [30]  5/9 5/9 5/9 5/9 5/9 7/15 9/16 11/14 12/9
  12/9 13/2 13/16 16/17 23/15 26/10 26/13
  28/7 28/8 30/5 30/10 31/4 35/18 36/6 36/6
  36/15 37/2 40/11 40/11 40/23 43/7 43/12
aside [1]  30/3
ask [13]  5/17 6/4 11/23 14/12 16/11 23/10
  25/14 28/22 29/15 31/10 33/8 39/6 42/11
asked [4]  5/22 21/20 21/22 41/25
asking [7]  16/13 16/14 16/16 17/9 17/14
  17/18 42/21
assess [1]  35/10
assume [4]  5/11 39/25 41/14 43/7
assumption [1]  35/2
attending [1]  30/13
Avenue [9]  1/13 1/18 1/22 2/3 2/8 2/11 2/15
  2/19 2/23

**A**

aware [1]  8/8
away [6]  12/20 29/7 30/23 36/14 36/24 37/14

**B**

back [13]  4/21 5/9 8/2 10/24 17/5 20/23
 24/14 31/5 32/3 35/15 42/22 42/25 43/23
backing [1]  18/16
bad [2]  34/22 37/11
BARBARA [1]  1/9
based [3]  8/21 30/18 35/4
basically [3]  18/19 26/14 29/8
be [103]
because [23]  4/20 5/10 6/3 8/13 12/12 12/16
 20/2 20/20 21/3 25/22 26/13 27/20 27/25
 31/7 31/21 32/20 32/23 36/11 36/13 40/9
 40/19 41/9 43/21
been [11]  9/16 15/11 18/19 18/21 18/22 19/4
 20/8 23/7 23/8 25/11 31/1
beer [8]  8/18 19/8 20/10 20/11 20/12 20/14
 20/15 29/6
before [28]  1/9 3/2 4/21 4/23 5/1 8/22 9/3
 9/14 9/21 14/7 15/11 15/15 15/23 17/10
 17/10 20/16 22/9 22/14 22/19 22/22 24/24
 27/10 29/6 35/20 38/4 38/6 38/12 38/24
beforehand [1]  10/7
being [9]  6/2 8/16 10/16 14/20 15/3 24/7
 24/25 31/4 34/12
believe [7]  6/15 19/12 20/7 25/17 27/21
 29/11 29/18
benefit [1]  25/18
best [1]  12/12
better [5]  7/23 8/19 8/23 11/20 26/11
between [3]  22/17 29/12 44/1
bigger [1]  20/16
binder [1]  41/24
binders [2]  41/6 41/8
binding [7]  19/21 21/1 21/4 21/4 21/15 21/16
 28/6
bit [3]  26/19 29/1 34/24
black [1]  7/9
bmcnamara [1]  1/20
both [11]  4/10 5/3 7/17 19/17 22/15 29/18
 30/2 37/5 37/5 38/13 40/5
bottles [1]  19/7
BRENDAN [2]  1/16 3/9
brief [6]  7/23 10/20 13/19 13/21 18/2 41/24
briefing [5]  7/18 10/19 11/7 11/9 30/11
briefs [6]  9/9 10/2 11/5 13/24 15/10 26/19
bring [5]  7/21 7/25 17/1 17/6 33/13
bringing [1]  8/4
brings [1]  19/10
Brockway [1]  19/17
brought [4]  8/25 9/1 15/12 15/13
bud [1]  9/8
built [1]  7/18
Bureau [2]  1/22 2/3
business [7]  12/1 14/23 15/1 20/14 20/15
 29/6 40/10
businesses [1]  8/24
businesspeople [1]  8/20
buy [1]  21/5
buyer [17]  14/19 17/19 17/24 21/7 25/7 28/3
 28/14 29/1 33/11 33/12 33/20 33/21 34/7
 34/7 34/9 35/3 35/12
buyers [5]  17/21 28/8 28/11 28/17 28/19
buying [1]  31/12

**C**

CA [1]  1/3
calendar [1]  33/5
call [5]  25/20 26/5 36/17 37/15 41/17
called [1]  10/15
came [3]  14/7 35/20 38/5
can [62]
can't [13]  4/4 4/20 21/3 24/4 27/15 28/20
 29/24 31/4 31/5 31/20 33/18 34/25 41/2
cans [4]  8/18 19/8 19/18 38/17
capacity [2]  29/7 29/8
capitalized [3]  28/5 35/3 35/5
care [2]  4/12 40/16
carefully [1]  6/12
case [23]  8/4 15/12 15/13 15/15 15/20 16/1
 18/19 19/5 19/5 19/6 19/14 19/17 19/19
 19/19 19/20 19/21 22/2 22/16 22/24 23/8
 24/6 27/9 27/10
cases [5]  15/10 19/11 22/15 23/7 30/12
Catch [1]  8/11
CATHARINE [1]  1/21
Cathy [1]  3/9
caution [2]  4/10 20/6
CCC [1]  27/9
CEO [1]  21/20
CEO's [1]  24/25
certain [2]  38/8 40/13
certainly [1]  26/12
CERTIFICATE [1]  44/8
certify [1]  44/9
cetera [1]  17/24
chairman [1]  21/22
chambers [1]  36/17 37/16 40/22
chance [16]  10/1 14/21 15/6 15/7 15/16
 15/16 15/17 15/18 15/24 16/9 17/13 22/2
 23/11 25/12 25/13 37/14
change [4]  12/25 13/1 24/4 35/4
changes [9]  7/2 7/4 7/8 7/14 10/18 11/14
 15/14 16/4 16/4
charts [4]  5/20 12/15 12/17 12/22
chess [1]  6/15
choose [1]  7/17
Christmas [1]  27/11
circle [1]  20/23
Circuit [1]  27/1
citation [1]  21/2
cite [3]  15/10 15/20 16/1
cited [2]  22/15 24/20
Civil [1]  3/3
claiming [2]  19/22 29/4
clear [1]  10/14
Clearly [1]  14/16
clerk [5]  4/16 6/17 7/1 40/21 40/21
client's [1]  31/5
clock [1]  26/14
clocks [1]  6/16
close [4]  13/23 25/1 26/5 26/15
closed [2]  18/6 20/24
closing [3]  21/3 21/6 39/15
closings [2]  38/22 39/21
CM [2]  2/22 44/14
cmoscatelli [1]  1/24
Coal [7]  15/12 24/1 24/10 24/11 24/16 24/7
 24/18
Collyer [1]  41/25
COLUMBIA [1]  1/1

combined [4]  14/25 19/1 20/11 20/14
come [13]  3/5 15/5 17/5 17/20 18/20 23/12
 26/11 30/24 31/7 31/19 33/16 38/8 40/6
comes [4]  13/23 13/23 13/24 16/18
coming [3]  4/20 4/21 36/4
COMMISSION [21]  1/3 1/13 1/17 1/21 2/2
 3/4 3/8 6/22 14/2 14/7 15/17 15/18 17/11
 17/12 19/23 20/9 23/17 24/3 25/6 25/12
 30/22
commissioners [4]  15/18 23/11 25/3 32/14
companies [1]  14/22
companies' [1]  12/2
company [3]  23/20 29/5 35/9
compete [1]  19/7
competition [7]  1/22 2/3 14/24 20/4 23/1
 29/22 34/22
competitive [2]  30/9 35/6
competitor [1]  29/8
complaint [1]  16/3
complete [1]  20/23
completed [1]  7/16
Compliance [1]  33/13
compressed [1]  43/6
computer [1]  12/22
conception [1]  38/8
concern [8]  3/23 4/3 9/2 29/21 31/23 35/19
 35/20 38/16
concerned [3]  25/16 30/14 35/14
concerns [15]  3/20 6/19 6/23 14/2 14/3 14/5
 14/7 20/8 24/23 29/3 30/10 30/19 30/23 35/6
 38/4
concluded [1]  44/5
conducting [1]  4/2
CONFERENCE [1]  1/9
confidentiality [2]  40/9 40/17
confuse [1]  4/13
cons [1]  6/2
consecutively [2]  4/15 41/18
consensual [1]  18/20
consent [2]  34/11 34/12
consider [4]  8/14 15/17 28/1 34/15
considering [2]  29/17 34/13
Constitution [1]  2/23
constructive [1]  37/22
contact [1]  27/13
context [2]  22/18 22/21
Continental [1]  19/15
contingent [1]  21/2
continue [2]  11/10 37/23
Continued [1]  2/1
contours [1]  22/11
contract [2]  21/15 21/17 33/11 33/18
contracts [2]  28/6 40/10
cooperate [1]  4/14
copies [1]  10/22
correct [4]  9/15 17/11 20/5 44/9
corrected [1]  11/8
could [15]  4/6 4/15 6/5 9/4 14/9 23/17 28/7
 30/12 32/15 32/20 33/1 36/2 39/5 39/7 41/11
counsel [6]  3/5 3/9 3/18 6/20 21/14 37/4
count [1]  9/24
counter [1]  11/3
couple [1]  10/24
course [1]  43/24
court [23]  1/1 2/22 2/23 3/2 12/16 14/11
 16/13 16/14 19/15 19/16 19/20 20/18 20/22
 24/5 24/10 24/18 24/20 24/20 24/21 27/10
 30/25 42/13 44/15

**C**

Court's [1]  16/23
courtroom [4]  6/16 28/12 39/25 39/25
courts [1]  19/17
covered [1]  27/6
crack [2]  21/13 30/19
CRAVATH [2]  2/18 3/17
cravath.com [1]  2/21
cross [2]  5/19 9/1
cross-examination [2]  5/19 9/1
cure [1]  29/21
current [1]  23/12
customers [5]  25/9 25/11 27/14 27/14 40/10
cut [1]  42/21
CVR [2]  2/22 44/14
CVR-CM [2]  2/22 44/14
CVs [1]  5/6

**D**

D.C [8]  1/5 1/14 1/19 1/23 2/4 2/15 2/24
 26/25
Dan [2]  33/13 33/16
date [13]  20/24 22/16 22/17 22/20 23/19
 26/14 26/15 33/10 37/1 37/2 37/3 37/4 37/12
dates [3]  11/8 38/21 39/16
Daubert [8]  7/17 7/19 7/21 7/25 8/2 8/4
 10/25 11/5
DAVID [1]  1/12
day [8]  4/21 4/23 6/14 15/22 16/25 26/16
 42/9 43/20
days [5]  5/23 5/24 10/24 30/3 30/4 30/13
 32/24 33/3 36/12 36/21 39/1 42/23
dead [2]  20/24 23/19
deal [6]  17/23 20/24 24/18 26/15 27/7 30/24
dealing [2]  34/2 40/10
decide [5]  6/3 6/5 17/14 26/20 31/6
decided [7]  14/5 14/6 14/8 18/23 20/25 22/16
 26/22
deciding [2]  18/1 24/3
decision [4]  29/17 31/13 33/2 43/25
decrees [2]  34/11 34/12
Defendant [4]  2/7 2/18 3/13 3/17
defendant's [1]  41/12
defendants [2]  36/5 41/13
defendants' [1]  41/17
definition [1]  19/13
definitive [12]  20/20 21/14 28/21 33/10
 33/24 34/3 34/12 34/16 34/17 34/22 34/23
 35/1 36/8
delay [1]  27/2
demonstrative [1]  12/14
demonstratives [2]  39/8 39/9
depends [1]  17/23
deposed [2]  21/20 21/21
deposition [5]  10/16 10/22 11/3 21/24 24/25
designations [2]  10/23 11/4
detail [3]  22/8 22/10 36/6
detailed [2]  22/3 22/6
did [3]  18/8 25/23 42/6
didn't [3]  10/5 37/21 38/23
difference [2]  24/17 32/19
differences [1]  24/16
different [5]  4/12 23/13 25/15 25/19 34/19
difficult [2]  13/1 40/19
diligently [1]  34/4
diminution [1]  20/3
direct [3]  5/15 5/19 6/5

directs [1]  5/24
disclosed [1]  35/11
discovery [24]  7/16 13/23 14/9 14/12 14/14
 15/6 15/16 15/23 15/25 16/9 16/19 18/6 22/9
 25/1 27/10 27/18 27/22 28/20 28/22 28/25
 31/16 32/10 33/23 35/16
discuss [1]  36/11
discussed [1]  18/21
discussing [2]  35/21 40/13
discussion [3]  6/25 7/1 33/15
discussions [1]  37/22
dispute [2]  4/5 35/16
DISTRICT [3]  1/1 1/1 1/10
divest [1]  18/25
divesting [1]  34/14
divestiture [8]  25/20 29/2 30/9 31/17 34/15
 35/21 36/14 36/25
divestitures [2]  25/5 25/6
Division [1]  1/17
do [66]
documents [1]  12/1
does [3]  20/2 40/14 43/19
doesn't [7]  9/16 22/24 22/25 25/22 32/13
 35/4 35/22
doing [3]  9/9 27/18 42/21
DOJ [2]  15/21 15/22
dollar [1]  8/24
don't [62]
done [14]  5/7 8/22 18/5 18/24 20/6 21/1
 24/19 27/4 27/7 27/8 27/13 28/25 39/15
 39/16
down [1]  36/3
drop [2]  20/24 23/19
drop-dead [2]  20/24 23/19
Dropping [1]  24/24
Ducore [1]  33/13
due [3]  10/21 11/11 27/19

**E**

each [5]  10/14 14/22 22/3 39/3 41/11
easier [2]  6/1 41/21
easiest [1]  41/19
easy [2]  4/16 42/23
Ed [2]  3/7 6/22
EDWARD [1]  1/12
effect [1]  38/17
effectively [1]  20/14
effort [2]  24/22 25/2
ehassi [1]  1/15
eight [2]  22/18 22/21
Eighth [1]  2/19
either [3]  13/16 18/4 40/21
Electric [2]  15/20 15/21
electronically [1]  41/23
elephant [1]  13/18
else [5]  13/11 21/24 30/4 37/5 42/5
emergency [1]  26/25
end [8]  23/8 23/20 36/22 36/24 39/16 39/17
 42/10 43/17
ends [1]  22/14
enjoy [1]  30/15
enough [9]  4/14 29/7 29/13 31/7 31/13 33/7
 33/7 36/9 36/16
enter [2]  20/19 21/1
entered [1]  14/4
entire [3]  22/16 23/7 27/10
entities [1]  20/16
entitled [2]  44/4 44/11

entity [2]  19/1 20/14
erols.com [1]  2/25
ESQUIRE [8]  1/12 1/16 1/21 2/2 2/7 2/10
 2/14 2/18
essentially [1]  19/6
et [3]  1/6 3/4 17/24
evaluate [5]  14/12 14/13 14/21 15/7 15/19
evaluating [2]  8/1 36/9
even [14]  2/18 3/16 6/5 15/23 20/4 20/5
 20/17 21/15 22/9 28/21 29/25 34/14 34/25
 43/1
evenings [1]  43/1
everybody [1]  37/5
everything [6]  11/19 13/11 25/18 32/7 32/12
 33/1
evidence [5]  15/5 16/18 17/12 18/1 18/3
exact [5]  19/13 19/14 22/11 22/11 24/1
exactly [1]  28/15
examination [2]  5/19 9/1
examine [1]  36/5
example [4]  8/17 8/18 10/15 10/18
exchange [1]  10/21 11/2
exclude [6]  8/5 8/6 9/21 17/2 25/18 25/20
excluded [2]  9/16 17/5
excluding [1]  9/25
exhibit [2]  4/11 10/22
exhibits [13]  4/3 4/5 4/9 4/17 10/22 11/3
 11/24 12/14 13/2 39/11 40/19 40/20 41/23
expect [2]  3/25 6/17
expectation [1]  7/25
experience [2]  28/14 35/7
expert [7]  7/16 8/5 8/6 8/9 8/14 9/16 13/24
experts [5]  5/6 8/7 8/17 8/19 12/15
experts' [1]  8/7
explaining [1]  18/17
explore [3]  8/4 23/17 23/21
express [1]  36/4
extended [1]  33/15
extensively [2]  21/20 21/23

**F**

fact [17]  9/24 11/11 11/12 12/6 13/23 14/9
 15/12 16/18 17/8 19/23 31/12 31/23 36/13
 36/19 37/9 39/17 39/21
factor [1]  29/17
facts [3]  15/7 24/24 31/17
fair [2]  8/1 29/14
fairly [1]  13/15
faith [4]  24/19 24/22 25/1 25/2
fantasy [1]  34/9
far [2]  5/9 29/13
fashion [3]  14/8 17/13 24/2
fashioned [1]  17/12
fashions [1]  34/10
fast [1]  5/10
faster [1]  5/6
favor [1]  21/8
fax [2]  2/16 2/21
FEDERAL [9]  1/3 1/13 1/17 1/21 2/2 3/3 3/8
 6/22 14/1
feel [1]  6/3
fiction [1]  24/5
field [3]  5/6 8/17 8/21
figure [1]  34/21
file [3]  10/9 10/9 12/2
filed [7]  13/20 15/15 15/22 16/3 18/19 22/10
 22/17
files [1]  12/2

**F**

filings [1]  41/5
fill [3]  3/21 4/8 4/9
final [1]  16/1
finally [2]  18/23 41/4
find [1]  5/23
findings [4]  11/11 11/12 39/17 39/21
fine [2]  37/1 39/13
first [11]  4/3 12/23 13/18 15/11 15/15 27/4
  33/22 37/15 38/3 39/19 43/20
fit [3]  28/4 43/19 43/19
five [10]  5/24 5/24 22/14 22/17 22/19 22/19
  22/21 22/22 39/6 39/13
five-year [1]  22/19
flexible [2]  36/21 43/13
flip [1]  41/20
flounder [1]  12/13
focus [1]  21/24
following [1]  11/12
footnote [2]  18/2 24/21
foregoing [1]  44/9
forever [1]  31/6
Forget [2]  37/9 37/10
form [4]  5/16 9/4 14/23 17/1
forms [1]  19/7
forth [1]  35/15
Forty [2]  39/6 39/13
Forty-five [2]  39/6 39/13
forward [1]  3/5
found [3]  12/12 19/23 24/18
four [19]  13/22 14/22 14/25 16/6 17/19 18/25
  20/7 21/5 21/6 21/19 21/21 22/4 22/7 22/12
  25/19 27/22 28/4 31/2 31/4
Franklin [2]  15/20 15/21
frankly [7]  15/7 18/1 23/14 23/17 28/25 31/5
  36/23
Friday [5]  7/16 10/17 11/11 25/10 42/18
front [2]  14/11 23/12
fruitful [1]  35/23
frustration [1]  31/22
FTC [25]  6/8 15/12 15/15 17/4 17/5 17/10
  18/20 19/17 19/22 19/23 21/12 23/14 27/7
  28/1 28/11 28/13 29/19 30/10 31/2 31/6
  31/14 34/10 34/18 36/4 36/16
FTC's [1]  24/23
ftc.gov [4]  1/15 1/20 1/24 2/5
fully [1]  27/15
fundamental [2]  19/6 19/9
funded [1]  5/7
further [2]  7/1 35/25

**G**

gained [2]  25/18 25/24
gambit [1]  18/18
gamesmanship [1]  15/3
gave [1]  32/8
gears [1]  37/13
Gee [2]  8/22 16/5
generation [1]  12/21
geographic [2]  22/25 38/15
geography [2]  26/1 30/8
get [22]  6/1 6/9 11/19 17/23 17/24 18/24
  20/24 21/13 24/4 24/5 25/15 27/3 28/8 28/17
  30/15 32/12 32/13 32/15 36/12 37/7 39/20
  42/8
getting [1]  25/25
give [18]  4/19 6/14 9/12 12/20 14/15 17/2

30/19 31/13 31/19 32/10 32/10 32/17 33/2
  38/25 40/21 41/11 43/12 43/25
give-away [1]  12/20
given [9]  6/19 12/7 14/21 22/8 29/16 29/23
  35/12 35/13 43/5
gives [3]  11/19 22/22 43/13
giving [3]  3/24 22/1 29/7
glass [3]  13/22 19/7 19/18
go [24]  5/5 6/20 18/10 20/22 21/9 21/10 25/8
  28/7 29/24 30/14 30/16 30/17 30/23 31/8
  31/21 31/24 34/13 35/18 36/13 37/14 42/17
  42/25 43/20 43/25
Gobain [2]  2/18 3/17
goes [2]  10/25 40/23
going [72]
gone [1]  23/15
good [18]  3/7 3/11 3/12 3/16 3/18 4/24 7/22
  11/16 12/4 24/19 24/22 25/1 25/2 30/11 31/1
  34/18 34/21 36/23
good-faith [1]  25/2
got [9]  7/9 23/16 28/14 30/4 33/18 33/19
  37/11 37/12 37/18
gotten [1]  19/5
GOUDISS [2]  2/10 3/14
grant [1]  17/1
Great [1]  11/23
GROUP [5]  1/6 2/7 3/4 3/14 18/15
guess [2]  22/2 42/19
guideposts [1]  43/13
guys [4]  7/22 32/16 35/15 42/25

**H**

H-374 [1]  1/14
had [26]  7/1 10/1 15/6 15/6 15/15 15/16
  15/17 15/18 15/24 16/9 20/16 22/4 22/7
  22/10 23/11 23/15 25/12 25/13 26/11 29/6
  37/22 38/4 38/23 39/24 41/25 42/4
hadn't [1]  15/23
half [4]  39/1 39/3 42/20 43/3
Half-hour [1]  39/3
hand [4]  7/9 30/5 32/25 34/17
handle [2]  40/15 40/23
happen [2]  10/7 37/10
happened [1]  15/19
happy [2]  30/22 38/11
hard [1]  26/6
hardest [1]  42/13
harm [3]  23/1 23/4 36/24
has [16]  10/12 13/19 14/1 14/2 18/6 19/5
  19/23 23/14 25/4 25/5 26/20 28/14 29/5
  30/10 35/6 41/5
hasn't [2]  15/19 25/13
HASSI [8]  1/12 3/8 6/22 23/25 24/14 25/17
  31/10 37/10
have [106]
haven't [5]  14/19 14/19 14/20 25/12 28/16
having [7]  3/22 11/10 14/13 14/14 14/15 15/5
  15/6
he [4]  8/19 15/22 31/13 33/14
he's [2]  33/13 33/14
head [1]  33/13
hear [12]  6/7 8/9 9/9 9/12 9/14 23/22 24/6
  24/14 25/21 35/23 37/3 38/9
heard [8]  9/15 16/19 21/14 29/16 30/18 31/3
  31/21 31/24
hearing [43]  1/9 3/22 3/23 4/2 4/5 4/23 8/5
  9/21 10/15 11/8 12/7 15/4 22/14 22/17 22/20
  22/22 25/11 25/25 26/13 26/15 27/3 27/5

27/6 27/16 29/12 30/3 31/21 31/25 32/5
  32/18 32/21 32/21 32/23 32/25 33/1 33/4
  35/18 36/15 37/2 37/3 37/12 38/21 39/16
hearings [2]  5/15 26/17
hears [1]  36/16
HEATHER [2]  2/14 3/15
held [1]  17/25
help [8]  5/20 9/5 9/18 10/4 10/5 36/1 36/17
  40/5
helpful [5]  5/15 5/21 5/22 5/25 12/16 12/18
  26/7 38/24 39/2 39/8 39/10 43/11
her [3]  40/3 40/4 40/6
here [34]  5/4 5/13 6/2 7/9 8/16 9/2 10/20
  13/21 15/3 15/9 15/19 16/5 16/9 16/21 17/9
  17/18 23/18 24/17 26/5 28/1 28/8 29/1 33/17
  34/3 35/20 35/25 36/8 37/5 37/7 37/17 38/5
  40/20 41/21 43/23
Here's [5]  16/7 16/7 16/8 18/4 18/5
herring [1]  29/1
high [1]  5/9
him [2]  21/20 21/22
his [1]  33/14
hit [1]  38/13
hkafele [1]  2/17
Honor [67]
Honor's [1]  12/5
HONORABLE [1]  1/9
hope [3]  11/25 12/3 12/18
hopes [1]  14/11
hour [15]  13/20 15/4 16/18 18/18 22/20 39/3
  42/19 42/22 42/22 42/24 43/1 43/2 43/3 43/7
  43/18
hourly [1]  6/14
housekeeping [6]  13/13 18/10 37/19 37/20
  38/3 42/6
how [21]  5/3 6/15 14/20 19/3 25/7 27/21 28/3
  28/5 31/18 32/2 32/4 32/17 33/6 36/21 39/3
  40/23 40/25 42/9 42/21 43/7 43/13
however [1]  7/5

**I**

I'd [2]  6/7 34/18
I'll [5]  9/12 18/9 30/11 33/5 39/18
I'm [38]  3/7 3/8 4/21 4/21 4/25 5/13 6/9 7/8
  9/9 9/13 9/18 17/11 19/3 22/6 23/3 23/6 24/5
  24/6 25/14 25/22 27/24 30/5 30/11 30/14
  31/12 31/24 32/23 32/25 33/12 34/14 35/24
  36/15 36/19 40/13 42/8 42/12 42/12 42/22
I've [8]  6/19 7/9 8/22 9/15 12/12 26/13 30/4
  31/24
i.e [1]  35/20
idea [6]  3/25 4/19 5/11 7/22 32/17 33/19
ideal [1]  27/2
identified [4]  14/19 14/20 21/25 28/11 28/13
  33/11 33/19
identify [1]  3/5
identity [3]  21/18 28/2 29/1
idiosyncrasies [1]  4/1
II [1]  1/17
imagine [1]  4/4
immediately [1]  21/6
important [7]  19/8 26/5 27/25 32/20 36/10
  38/9 38/14
imposing [1]  34/7
inaccurate [1]  12/25
include [1]  13/1
indeed [2]  14/3 30/8
indications [1]  10/14

**I**

industrial [2] 28/14 35/7
industry [2] 35/6 35/9
information [8] 17/6 22/3 22/7 31/16 32/12 32/13 32/15 40/15
instead [5] 10/23 11/3 11/4 11/10 11/13
integral [1] 24/18
intend [1] 18/5
intending [1] 4/8
intention [2] 8/15 14/18
intentions [2] 12/12 14/11
interest [4] 16/23 31/5 32/9 34/21
interesting [2] 30/4 30/10
investigated [1] 29/11
investigatory [1] 14/6
involved [3] 8/11 16/8 24/5
involving [1] 15/21
is [140]
isn't [7] 5/21 14/17 18/18 25/2 33/7 34/9 34/18
issue [4] 19/14 20/22 22/23 26/4
issues [9] 6/23 9/4 25/6 26/20 35/19 38/3 38/6 38/13 40/9
it [117]
it's [36] 4/13 7/21 7/24 8/21 8/22 9/15 10/4 10/6 10/6 12/25 13/4 13/22 14/17 16/4 18/18 21/13 22/18 26/5 27/20 28/2 28/2 29/6 29/7 29/14 31/1 32/9 34/6 34/7 34/20 34/24 35/6 35/7 35/22 36/10 38/7 42/23
its [1] 24/21
itself [2] 19/23 20/13

**J**

January [4] 20/24 23/18 23/20 36/25
jelled [1] 15/8
Jersey [2] 1/18 2/3
job [1] 24/3
joint [2] 15/22 41/13
JUDGE [2] 1/10 41/25
jump [1] 38/22
just [45]

**K**

KAFELE [2] 2/14 3/15
keep [5] 4/24 6/13 6/17 10/8 41/16
key [1] 29/2
kind [3] 5/5 5/6 40/13
knew [1] 42/11
know [39] 3/19 3/22 4/7 4/8 5/20 6/15 7/20 7/23 8/23 9/13 13/4 14/25 21/15 23/14 23/16 26/21 30/12 31/17 32/20 33/12 33/24 33/25 35/1 35/8 36/20 36/21 37/4 37/6 38/23 39/19 40/25 41/2 41/7 41/12 41/13 41/24 42/21 42/24 42/24
known [5] 14/1 21/17 21/18 22/3 22/11
knows [2] 8/19 35/22

**L**

LAMBERG [1] 2/14
last [5] 13/1 13/20 26/16 37/10 37/22
late [1] 43/21
later [2] 9/17 10/1
latest [1] 16/2
law [2] 6/25 40/21
lawsuit [1] 22/9
lawsuits [1] 22/21
lead [2] 6/20 34/6
least [5] 8/19 30/18 32/15 43/11 43/13
leave [2] 36/15 37/1
led [1] 30/5
less [3] 20/15 26/16 29/6
let [19] 4/19 6/3 8/4 11/23 12/11 16/11 16/20 16/20 23/10 23/22 24/14 27/17 29/10 31/10 34/5 39/6 39/18 41/2 41/7
let's [11] 6/11 16/25 18/9 25/18 27/2 31/23 39/19 41/17 42/17 42/18 43/16
Lexington [2] 2/8 2/11
liaise [1] 40/1
Libby [6] 16/1 16/1 16/2 24/20 24/20 24/21
light [3] 8/25 9/1 17/7
like [24] 4/2 4/5 4/17 4/22 5/15 6/7 6/10 6/20 7/5 7/10 12/15 13/10 13/14 16/4 22/13 22/20 25/11 25/22 35/9 36/14 38/7 41/9 42/19 42/23
likely [1] 25/22
limine [1] 16/17
limit [1] 8/16
limited [5] 5/19 9/2 37/12 38/5 38/12
limits [1] 6/18
line [3] 7/9 29/14 36/22
lined [1] 38/7
list [5] 10/10 10/11 31/19 32/8 32/10
listen [1] 33/1
lists [1] 10/22
litigated [1] 15/11
litigation [1] 22/19
litigator [1] 37/11
little [4] 26/16 26/19 34/24 40/18
live [1] 10/15
LLP [3] 2/11 2/14 2/18
long [6] 5/9 22/4 27/21 31/18 32/4 42/9
longer [2] 24/7 43/2
look [12] 4/24 6/20 18/2 26/6 28/24 29/25 30/2 30/20 32/13 32/14 33/5 33/23
looking [3] 33/8 40/3 42/12
loses [1] 26/24
lot [8] 15/1 22/13 33/17 35/11 35/13 40/11 41/16 41/22
love [1] 30/3
lunch [7] 42/20 42/22 42/24 43/1 43/2 43/4 43/18
luxury [2] 23/21 27/1

**M**

made [9] 6/7 10/19 16/4 16/4 20/11 23/25 24/1 32/8 37/2
main [1] 25/6
maintaining [1] 40/16
make [17] 7/17 8/9 8/13 12/11 12/25 13/1 20/10 20/25 25/7 30/23 32/19 34/5 35/2 36/16 37/16 40/6 42/1
makes [2] 12/22 33/20
manage [2] 28/4 33/19
management [1] 34/6
manager [2] 33/21 34/6
managing [1] 28/11
many [3] 5/3 5/14 36/20
marked [1] 4/4
market [24] 14/24 19/11 19/13 19/14 19/18 19/20 19/21 19/22 19/24 20/2 20/5 20/5 21/9 22/24 22/25 23/7 25/25 26/4 29/3 29/9 30/8 38/14 38/15 38/15
MARY [1] 1/21
matter [7] 3/2 13/4 13/15 13/17 33/23 44/5 44/11
matters [3] 13/13 18/11 42/6
may [13] 6/5 7/16 10/5 13/17 17/20 17/20 22/13 22/20 23/23 35/12 36/12 39/20 41/21
maybe [4] 18/16 22/18 32/21 43/1
McNAMARA [2] 1/16 3/9
me [53]
mean [21] 10/5 14/17 15/8 15/18 15/23 18/1 30/17 31/20 32/8 32/13 32/18 33/18 34/5 35/15 37/4 37/10 37/21 37/21 38/7 43/15 43/19
meet [1] 37/5
mentioned [4] 11/15 26/13 38/4 43/12
merger [1] 19/19
Mergers [1] 1/17
merits [1] 17/22
mesh [2] 32/5 32/17
methodology [1] 8/21
microphone [1] 28/17
mid [3] 20/24 23/18 23/20
mid-January [3] 20/24 23/18 23/20
might [6] 4/18 8/3 9/5 12/15 23/12 38/19
Mina [2] 2/2 3/10
mind [4] 4/25 6/13 10/8 33/3
minimal [1] 27/12
minors [1] 7/2
minute [2] 13/1 37/22
minutes [5] 39/5 39/6 39/12 39/13 42/25
modified [1] 16/8
moment [1] 37/10
Monday [3] 11/10 11/12 42/18
month [4] 3/22 16/3 16/3 37/18
months [7] 14/1 15/14 22/7 26/16 27/20 27/21 33/24
MOORE [2] 2/18 3/17
moot [2] 16/25 17/4
more [16] 7/25 11/19 20/13 23/23 26/19 27/3 30/21 31/15 31/17 33/6 36/23 38/16 39/8 39/10 40/18 41/17
morning [8] 3/7 3/11 3/12 3/16 3/18 10/12 12/24 38/5
MOSCATELLI [2] 1/21 3/9
Moscatelli's [1] 15/13
most [5] 12/1 19/8 27/9 35/17 42/1
motion [6] 8/5 8/13 9/5 16/17 17/1 17/2
motions [9] 7/17 7/19 7/21 7/25 8/2 9/7 9/14 11/1 11/5
move [1] 31/23
moving [1] 10/24
Mr [3] 25/14 31/10 37/10
Mr. [7] 23/25 24/14 25/17 26/9 28/9 32/11 34/2
Mr. Hassi [3] 23/25 24/14 25/17
Mr. Schwed [4] 26/9 28/9 32/11 34/2
Ms [1] 15/13
much [12] 6/15 11/20 12/9 13/11 14/20 19/3 33/6 36/6 39/3 40/11 40/25 43/14
multimillion [1] 8/24
must [3] 7/20 7/22 26/15
my [23] 3/20 3/20 3/23 4/1 4/3 5/2 6/4 6/17 6/19 12/20 29/12 29/17 29/23 30/2 31/5 33/5 34/10 35/24 36/17 37/16 40/21 41/8 42/22

**N**

N.W [6] 1/13 1/18 1/22 2/3 2/15 2/23
name [2] 28/21 35/12
necessarily [1] 20/21
necessary [3] 17/22 36/2 42/20
need [26] 8/9 12/7 13/11 21/25 26/21 27/4

## N

need... [20]  27/22 31/15 31/16 31/16 31/18
 31/19 32/4 32/11 32/12 33/6 33/10 33/24
 33/25 34/23 36/6 37/4 37/6 37/16 39/3 43/1
needs [5]  27/4 27/6 27/12 28/25 36/4
negotiate [1]  34/5
negotiates [1]  34/12
negotiating [2]  28/10 28/19
negotiations [2]  21/17 29/13
never [1]  23/16
new [7]  1/18 2/3 2/8 2/12 2/20 29/5 37/8
news [2]  13/22 13/22
next [2]  4/23 5/2
nice [1]  33/3
night [3]  4/23 7/23 24/24
nip [1]  9/8
NJ [1]  1/23
no [15]  12/24 12/24 13/5 14/12 18/1 22/6
 24/6 27/15 28/10 28/16 28/16 31/20 32/21
 34/18 35/6
nobody [1]  12/22
nodding [1]  4/25
not [64]
nothing [2]  21/24 30/4
November [1]  11/13
now [21]  4/19 7/7 7/20 8/8 9/6 14/1 14/10
 18/9 19/25 21/18 22/13 29/4 29/10 29/12
 32/3 32/13 37/1 37/11 37/12 37/19 40/3
number [9]  1/3 3/3 4/11 4/11 4/14 4/15 18/21
 22/15 41/18
numbers [1]  4/13
NY [3]  2/8 2/12 2/20

## O

O-I [1]  19/16
objecting [1]  9/25
objections [1]  11/2
obviously [4]  17/3 21/2 30/23 35/15
October [5]  10/23 11/4 11/4 11/6 11/13
October 2nd [1]  10/23
October 30th [1]  11/13
October 3rd [1]  11/4
October 9th [2]  11/4 11/6
off [4]  6/20 13/22 26/13 27/1
offered [1]  8/16
office [1]  8/2
Official [2]  2/23 44/15
often [2]  12/12 22/21
okay [38]  1/14 6/19 7/8 9/6 9/11 9/22 9/23
 10/2 10/7 10/8 11/17 12/11 13/2 13/3 13/7
 13/9 16/21 18/8 18/13 23/22 24/21 26/3 26/8
 31/9 32/1 32/4 37/17 37/24 38/2 39/12 39/22
 40/4 41/4 42/3 43/9 43/21 43/23 44/1
on-going [1]  40/10
one [27]  4/13 5/12 7/16 7/25 8/19 12/11
 13/14 15/22 16/2 16/3 17/3 20/1 20/15 22/23
 23/23 25/6 26/5 31/3 33/14 34/5 35/17 35/21
 38/16 38/19 39/24 41/14 42/7
ones [2]  38/14 42/25
only [7]  4/7 4/13 22/23 22/25 23/2 23/4 42/7
open [1]  28/12
openings [1]  38/22
opinion [4]  11/23 24/21 29/20 36/13
opinions [3]  8/16 16/24 16/24
opportunity [5]  12/8 14/13 14/14 14/15 36/6
oppositions [1]  10/25
order [11]  5/4 7/2 7/4 7/12 8/8 13/17 20/25

ordered [1]  11/22
originally [1]  23/15
other [16]  10/14 12/23 17/3 17/11 18/10 19/7
 20/13 22/8 23/6 29/14 30/5 30/12 31/3 32/25
 35/22 38/16
others [1]  6/6
otherwise [1]  37/17
ought [1]  17/13
our [24]  6/25 7/24 8/15 10/20 12/8 13/24
 13/24 14/15 20/3 20/13 20/22 21/20 21/21
 23/19 25/4 27/3 27/6 27/12 28/2 33/13 38/8
 39/17 42/8 42/13
out [27]  3/20 4/10 5/11 5/14 6/25 10/13 12/1
 12/7 16/20 20/6 23/12 28/8 30/24 33/3 34/21
 35/16 35/20 36/12 37/15 38/5 41/3 42/8
 42/14 43/16 43/24 43/24 44/1
over [7]  17/6 27/11 32/23 33/4 34/17 39/1
 40/17
overnight [1]  26/23
overview [1]  38/25
own [5]  19/1 20/14 21/4 24/2 38/8
owns [1]  35/9

## P

packaging [2]  19/7 35/8
page [1]  7/15
page 6 [1]  7/15
paper [2]  41/6 41/9
paragraph [5]  7/15 10/18 10/25 11/2 11/7
part [3]  12/1 19/1 28/1
particular [2]  19/8 40/16
parties [14]  7/3 7/17 11/15 11/21 15/10
 15/24 16/9 17/16 17/17 24/22 26/7 26/18
 40/15 40/16
parties' [1]  12/2
party [1]  25/5
past [1]  20/12
pending [1]  17/10
Pennsylvania [3]  1/13 1/22 2/15
people [3]  8/20 8/23 36/22
percent [2]  20/8 20/12
percentage [2]  13/6 13/6
perfectly [1]  42/14
period [3]  4/7 9/2 15/23
person [4]  6/2 34/8 35/5 42/12
Personally [1]  43/5
pick [1]  4/11
place [1]  3/24
plaintiff [4]  1/4 1/12 2/2 6/9
plaintiff's [2]  41/12 41/18
plan [7]  21/9 23/12 30/17 34/18 36/25 37/8
 42/8
planning [2]  21/13 21/19
plans [8]  3/21 14/10 21/21 21/23 31/17 36/5
 36/6 36/14
plant [4]  22/8 22/8 22/10 22/10
plants [30]  13/22 14/22 14/25 16/6 17/19
 18/22 18/25 20/7 20/10 20/11 21/5 21/6
 21/19 21/21 21/23 22/4 22/7 22/12 24/3 28/3
 28/4 28/12 28/15 29/3 31/2 31/4 33/20 34/14
 35/1 35/21
plastic [1]  38/18
plastics [1]  19/9
play [2]  16/20 40/23
plenty [1]  15/3
Plaza [1]  2/19
please [2]  3/5 28/17

plenty [1]  22/22
podium [1]  26/11
point [8]  14/17 14/17 19/11 23/23 29/23
 31/25 34/5 35/18
position [3]  9/21 29/18 29/19
possible [3]  12/10 17/19 33/5
possibly [1]  30/6
post [2]  11/7 11/9
potential [1]  7/18
potentially [1]  26/24
power [1]  29/3
pre [3]  1/9 4/4 4/4
pre-admitted [1]  4/4
PRE-HEARING [1]  1/9
pre-marked [1]  4/4
precipitous [1]  29/25
prefer [1]  43/3
preference [4]  38/23 40/14 41/5 41/8
prejudiced [1]  18/7
premature [1]  29/25
prepare [1]  5/15
prepared [4]  3/19 11/19 25/23 36/21
present [3]  29/18 29/20 39/1
presentation [1]  40/12
presenting [1]  36/7
preserve [2]  17/9 17/17
presume [1]  17/5
pretrial [1]  12/9
pretty [2]  7/22 13/11
prevents [1]  21/25
previously [1]  10/19
prices [1]  40/11
primary [1]  21/24
probably [8]  3/21 9/7 12/16 25/15 28/7 30/12
 38/16 41/19
probe [1]  27/7
problem [6]  11/24 23/18 30/9 31/1 33/9
 40/19
procedures [1]  3/25
proceed [2]  5/18 7/6
proceeding [1]  17/8
proceedings [4]  16/9 17/25 44/4 44/10
process [3]  21/22 22/9 27/13
product [14]  19/11 19/13 19/14 19/18 19/20
 19/21 19/22 19/24 20/2 20/5 20/5 22/24 23/7
 26/4
production [1]  38/15
progress [1]  43/8
proposal [2]  16/18 34/15
propose [5]  10/21 11/2 11/9 13/21 14/10
proposed [7]  11/14 11/21 15/14 18/17 23/15
 24/7 31/2
proposing [2]  14/21 19/25
pros [1]  6/2
provide [1]  10/13
provided [1]  41/24
providing [1]  42/1
public [2]  25/10 28/2
publicly [1]  30/24
published [1]  5/8
purchase [2]  20/20 23/20
purchasing [1]  19/2
pursue [1]  10/6
pushed [1]  11/11
put [8]  5/9 12/22 14/10 18/4 22/2 26/13
 32/23 36/6
putting [4]  22/14 27/1 33/4 38/24

**Q**

question [15]  5/2 19/6 19/10 20/1 21/9 23/1
 23/21 25/15 27/5 27/25 29/2 29/23 30/2
 30/11 38/4
questions [12]  5/17 6/4 15/2 17/15 25/3
 33/12 33/17 33/22 38/10 38/20 39/24 42/4
quick [1]  42/7
quite [1]  25/21
quo [2]  17/10 17/18

**R**

radio [1]  23/15
raise [1]  13/16
raised [1]  20/8
rare [1]  19/19
rather [1]  34/18
reach [1]  18/22
read [6]  5/6 5/10 5/16 9/14 10/2 13/19
reading [1]  9/13
ready [3]  5/4 6/20 28/7
realistic [1]  36/19
realize [1]  37/10
realized [1]  36/22
really [14]  4/14 4/20 5/10 6/10 9/2 12/7
 22/23 29/21 32/8 35/4 37/3 41/1 41/16 42/20
reason [2]  27/15 27/25
reasonable [2]  11/18 28/22
reassigned [1]  19/4
rebuttal [3]  6/9 6/10 6/11
recent [1]  27/10
recently [1]  19/4
recognize [4]  20/20 26/18 26/23 35/17
record [3]  3/6 27/11 44/10
red [1]  29/1
relevant [2]  19/3 19/19
reluctant [2]  32/23 32/25
remedies [1]  15/11
remedy [9]  13/21 14/13 14/16 17/12 17/13
 17/18 17/21 24/2 30/6
remove [1]  40/14
render [2]  16/24 16/25
replaces [1]  29/9
reply [3]  10/21 11/5 11/12
reporter [5]  2/22 2/23 42/13 44/8 44/15
reports [1]  13/24
reputable [2]  35/3 35/5
require [2]  17/16 17/17
reserve [1]  6/12
resolve [2]  12/9 24/22 25/2 30/7
respect [1]  13/17
respond [1]  25/23
rest [1]  25/24
restore [1]  14/24
result [2]  23/13 36/24
review [3]  4/18 4/20 9/7
revised [4]  7/3 18/17 19/25 20/4
RICHARD [3]  2/7 3/12 18/14
right [17]  4/13 8/9 9/6 16/20 17/6 19/22
 19/24 25/14 28/9 28/9 29/10 37/1 37/11
 38/22 39/23 40/3 41/14
rigid [1]  35/8
ring [3]  41/6 41/8 41/24
room [1]  13/18
ROTHSTEIN [1]  1/9
roughly [1]  26/16
rschwed [1]  2/9
ruin [1]  6/16

rule [3]  17/3 17/4 21/8
rules [1]  20/18
ruling [8]  8/9 17/3 20/22 25/25 30/15 36/12
 37/2 37/12
run [1]  28/3
running [4]  8/23 21/22 26/14 28/15

**S**

S.A [2]  1/6 3/4
safe [1]  31/25
said [9]  10/12 16/7 19/17 19/21 24/5 24/10
 30/25 30/25 32/6
Saint [2]  2/18 3/17
Saint-Gobain [2]  2/18 3/17
sale [3]  15/9 17/19 25/19
sales [3]  20/11 20/12 25/19
same [6]  4/11 19/13 19/14 19/18 24/1 25/15
sanitize [1]  40/12
sanitized [1]  40/20
satisfied [2]  31/14 31/14
satisfies [1]  32/20
satisfy [3]  25/5 29/3 30/19
say [20]  5/12 8/17 10/5 12/17 12/24 14/23
 15/17 16/4 16/25 25/18 27/2 28/12 30/10
 31/6 31/20 32/3 34/14 34/25 35/18 39/5
saying [10]  8/14 13/5 16/5 16/10 22/1 22/6
 23/6 29/5 32/11 32/22
says [2]  18/4 34/18
scale [1]  36/8
scenario [1]  16/21
schedule [7]  7/18 7/18 10/20 11/18 12/6
 32/24 43/6
scheduled [6]  10/17 11/6 35/19 36/15 36/20
 37/2
scheduling [5]  6/25 7/1 7/2 7/3 7/12
school [2]  5/8 5/9
SCHWED [8]  2/7 3/13 18/15 25/15 26/9
 28/9 32/11 34/2
second [1]  39/20
section [2]  25/4 33/14
see [13]  12/23 29/12 35/17 36/17 37/13 37/17
 39/19 40/6 40/19 40/22 40/23 43/7 43/23
sell [9]  13/22 14/18 14/22 16/5 20/7 21/3
 21/19 21/21 21/23
selling [1]  20/13
send [3]  7/3 7/5 7/7
sense [1]  29/2
separate [1]  40/20
September [2]  1/6 10/21
September 30th [1]  10/21
serious [2]  15/1 17/15
set [11]  30/3 37/4 40/21 41/11 41/12 41/12
 41/13 41/14 41/17 41/18 42/23
settlement [1]  23/16
seven [1]  22/21
severely [1]  18/6
she [2]  40/5 41/25
SHEARMAN [5]  2/7 2/11 2/14 3/13 3/14
shearman.com [3]  2/9 2/13 2/17
shooting [1]  34/1
shop [1]  15/13
short [2]  4/7 20/21
should [15]  6/13 6/18 8/25 9/16 13/5 15/4
 15/5 16/19 17/16 17/17 17/25 18/1 21/12
 36/17 40/6
shouldn't [1]  10/6
show [2]  5/20 12/22
shows [1]  7/9

side [9]  4/12 12/23 18/10 26/24 27/17 29/15
 29/20 35/21 35/22
sides [3]  4/11 5/3 22/15
sign [1]  34/16
significant [1]  13/15
silent [1]  41/17
simple [1]  41/17
simply [1]  7/5
since [9]  11/9 12/22 12/25 18/6 18/19 19/4
 21/19 28/12 31/2
single [1]  21/4
sit [4]  31/5 31/20 32/3 36/3
sitting [1]  35/25
situation [2]  21/11 30/7
six [4]  22/21 23/8 27/20 27/21
sliding [1]  36/8
so [54]
sold [3]  14/20 24/4 35/2
sole [1]  29/23
solve [1]  30/9
some [27]  3/25 4/23 5/6 6/6 6/12 6/23 6/23
 6/24 7/2 8/6 8/7 8/16 9/4 10/18 13/13 13/17
 24/16 25/17 26/21 27/3 31/16 34/9 34/14
 36/9 39/10 43/1 43/13
somebody [10]  18/4 28/14 33/19 34/6 34/7
 34/13 35/7 35/7 35/8 40/1
someone [1]  8/2
something [5]  5/17 6/10 12/21 16/11 18/18
 22/19 23/10 36/7 37/15 42/23
sometime [1]  44/1
sometimes [5]  5/21 5/21 6/4 39/15 39/16
soon [1]  28/7
SORENSEN [2]  2/22 44/14
sorry [2]  7/8 23/3
sort [10]  4/1 4/25 10/13 19/10 30/5 35/21
 36/8 38/25 40/12 41/6
sound [3]  12/23 22/20 25/22
sounds [3]  11/16 13/10 30/3
Speaking [1]  27/19
specific [2]  38/6 38/10
speed [3]  4/18 9/5 27/19
speeding [1]  5/13
spend [2]  26/18 37/16
spending [1]  36/11
spirits [2]  19/9 29/7
split [1]  6/11
splitting [1]  6/8
spot [1]  26/22
sprung [2]  37/9 37/21
staff [1]  31/2
stage [1]  14/6
stake [1]  37/7
stand [3]  5/1 18/4 38/25
standard [1]  34/25
start [14]  3/20 6/24 7/14 7/23 18/16 24/15
 27/16 33/10 34/25 42/10 42/14 42/18 43/16
 43/17
started [1]  15/24
starting [5]  17/21 19/10 33/9 42/15 43/21
starts [1]  12/7
statement [2]  5/16 5/17
STATES [4]  1/1 1/3 1/10 3/3
status [2]  17/9 17/17
staying [2]  5/25 6/18
STERLING [5]  2/7 2/11 2/14 3/13 3/14
still [9]  8/1 8/12 10/5 21/9 21/10 25/17 28/10
 28/18 41/9
strategy [1]  18/19

**S**

stretch [1]  43/15
strongly [2]  6/3 19/12
structure [1]  3/23
sub [1]  22/23
sub-issue [1]  22/23
submit [1]  11/21
submitted [1]  10/16
submitting [1]  26/19
substantial [1]  17/15
substantive [2]  13/15 13/17
such [1]  17/16
sudden [2]  5/23 34/23
suffices [1]  17/21
sufficient [2]  14/16 31/4
suggest [2]  37/11 43/6
suggest that [1]  37/21
suggesting [1]  36/10
suggestion [2]  12/11 13/20
Suite [3]  1/14 1/18 2/4
suppose [1]  33/1
supposed [1]  34/16
Supreme [2]  19/15 19/20
sure [10]  5/13 6/10 7/1 17/11 17/11 19/3 20/25
 27/24 30/11 35/24 42/1
surrounding [1]  31/17
SWAINE [2]  2/18 3/17
switch [1]  37/13

**T**

table [1]  3/9
take [14]  3/24 4/24 5/8 14/9 14/14 22/1 24/3
 26/21 26/24 26/25 27/20 27/21 31/18 42/19
taken [1]  24/25
takes [2]  5/1 26/6
taking [3]  4/22 10/11 30/19
talk [10]  13/2 13/12 17/21 24/21 27/14 27/17
 36/3 37/7 43/2 43/2
talked [2]  12/6 25/9
talking [2]  27/23 32/18
team [2]  33/14 34/6
technology [1]  39/25
teed [1]  27/15
tell [19]  4/6 4/22 5/3 5/3 5/7 7/7 9/6 18/9 25/9
 27/19 27/20 28/7 28/8 29/10 31/14 33/2
 35/14 41/2 43/3
telling [2]  3/20 21/13
tempted [1]  33/12
terminate [1]  23/19
terms [15]  3/25 4/1 9/17 9/20 10/6 10/9
 10/19 23/5 25/3 34/3 38/21 39/15 40/15 41/5
 42/9
testable [1]  8/22
testify [2]  9/25 10/15
testimony [11]  8/7 9/15 10/1 10/16 16/14
 25/21 35/23 38/23 40/18 40/22 40/25
than [9]  5/7 8/20 8/23 20/13 20/15 29/6
 30/22 36/23 38/16
Thank [8]  7/13 18/14 24/8 24/9 24/13 39/13
 44/2 44/3
that [257]
that's [27]  5/2 5/20 8/12 9/18 10/16 12/12
 12/17 12/20 12/24 13/22 15/3 15/20 17/11
 17/18 18/18 19/13 21/11 22/19 24/7 24/9
 25/1 27/17 28/22 37/11 38/14 41/19 42/20
the brief [1]  41/24
their [16]  5/6 15/10 18/2 20/5 20/11 22/2

24/2 28/20 29/3 29/20 29/20 29/21 30/23
 31/7 32/9 34/21
them [27]  4/15 4/20 4/22 5/1 9/15 10/20
 11/11 14/8 21/5 21/25 22/2 22/8 22/14 22/22
 23/12 28/5 28/16 28/21 29/15 30/19 31/19
 32/10 35/13 36/9 36/16 41/19 41/20
themselves [1]  38/21
then [37]  3/21 4/15 5/10 5/16 5/18 5/23 5/24
 6/2 6/11 9/17 11/5 11/8 11/12 12/24 17/2
 17/4 17/5 18/10 20/22 20/23 21/5 21/19 25/9
 26/20 26/24 27/5 28/20 30/15 32/20 33/2
 33/22 34/17 34/17 36/17 36/25 40/20 41/4
there [42]  3/24 4/4 4/17 5/2 5/12 5/17 5/19
 6/23 8/1 8/16 11/24 13/11 13/13 13/14 14/3
 15/1 17/12 17/15 18/23 19/9 20/3 20/10
 21/24 23/7 23/11 25/17 25/23 26/2 30/19
 31/20 33/12 33/17 34/11 34/12 36/2 36/22
 37/14 38/6 38/9 40/9 40/11 40/25
there's [11]  5/17 8/18 13/20 15/8 18/2 18/2
 19/19 19/20 27/12 27/14 40/1
THERESA [2]  2/22 44/14
theresams [1]  2/25
these [23]  8/19 8/23 9/4 9/10 10/18 10/19
 12/1 14/10 14/20 16/5 16/19 17/25 20/7 22/4
 24/24 26/22 28/3 28/3 29/2 32/24 33/14
 36/21 36/22
they [75]
they'll [1]  28/8
they're [12]  13/21 14/21 16/5 16/10 17/20
 18/3 22/1 24/2 24/2 34/16 34/21 41/20
they've [8]  5/7 5/7 21/17 21/18 22/2 22/4
 22/7 33/19
thing [12]  17/4 17/6 26/1 32/14 32/21 36/23
 36/24 37/11 37/13 40/13 41/6 42/7
things [13]  4/18 5/13 9/5 12/15 20/22 26/22
 33/15 38/10 40/7 41/5 41/6 41/16 43/3
think [69]
thinking [6]  6/11 6/18 34/25 41/23 42/22
 43/16
thinks [1]  8/19
third [2]  12/2 40/16
this [100]
thoroughly [1]  29/11
those [23]  5/24 7/4 9/7 9/14 11/14 13/2 13/16
 14/5 14/7 14/25 15/12 17/19 20/10 21/6 30/4
 30/13 31/2 31/3 33/22 36/6 38/11 39/15 42/4
though [1]  38/15
thought [2]  9/3 38/19
three [25]  5/23 15/10 16/2 20/10 26/16 27/8
 27/11 28/19 28/21 29/12 29/14 30/13 32/3
 32/7 32/16 32/24 33/3 33/6 36/4 36/14 36/21
 37/18 41/6 41/8 41/24
three-ring [3]  41/6 41/8 41/24
through [10]  7/4 23/8 30/7 30/14 30/16
 30/17 35/25 39/10 41/20 43/25
throw [2]  5/11 5/14
Thursday [2]  41/25 42/17
tight [1]  32/24
time [39]  4/8 5/25 6/8 6/12 6/12 6/13 6/15
 6/17 6/18 9/3 9/7 10/4 11/19 12/24 13/4 13/5
 18/23 20/20 20/21 21/1 22/4 22/23 23/21
 26/21 26/24 27/3 31/7 33/6 34/11 37/13
 37/17 38/6 38/12 39/3 42/10 42/10 42/15
 43/7 43/14
timekeeping [2]  9/18 9/20
timely [1]  14/8
times [2]  5/14 11/8
timing [5]  10/6 32/4 32/17 32/18 39/20

today [6]  7/4 28/7 29/16 30/18 35/20 35/25
together [2]  28/4 37/7
told [2]  28/16 31/24
ton [1]  33/12
too [2]  41/10 42/19
took [1]  27/11
touch [1]  40/4
touching [1]  41/1
TRADE [9]  1/3 1/13 1/17 1/21 2/2 3/3 3/8
 6/22 14/2
transaction [16]  14/2 14/4 15/14 17/16 18/17
 19/25 20/4 20/16 20/23 21/3 21/6 22/11
 23/19 24/4 24/6 24/7
transactions [1]  27/22
transcript [2]  1/9 44/10
transferred [1]  21/7
trend [1]  8/18
trial [9]  9/5 11/7 11/9 11/10 14/11 17/10
 17/22 42/9 42/23
tried [1]  23/8
trip [1]  4/21
trouble [1]  43/25
true [1]  38/7
try [11]  6/13 6/14 10/13 12/9 22/1 25/5 26/25
 38/11 39/1 40/11 41/22
trying [7]  9/18 18/20 24/2 24/2 36/19 42/8
 42/12
Tuesday [1]  1/6
turning [1]  35/16
turns [2]  4/10 36/12
two [20]  4/12 14/22 14/22 15/14 16/25 19/1
 19/1 20/15 20/16 21/18 22/5 22/12 22/13
 28/19 31/1 31/12 32/19 33/7 36/16 39/1
two-and-a-half days [1]  39/1
type [1]  28/13

**U**

unanswered [1]  33/17
understand [8]  5/18 8/10 9/1 10/3 12/5 31/22
 33/6 33/7
understanding [1]  34/10
understood [2]  14/3 35/19
unfair [1]  34/24
unilaterally [1]  18/24
UNITED [4]  1/1 1/3 1/10 3/3
unless [2]  42/5 43/23
until [7]  7/14 15/3 15/7 22/17 26/15 33/18
 34/15
up [17]  7/10 17/20 17/25 18/16 18/20 19/10
 22/14 26/14 26/25 27/15 31/19 33/13 33/16
 34/13 35/25 38/7 42/23
updated [1]  10/10
upon [1]  21/6
urge [4]  35/24 36/1 37/3 37/7
us [18]  13/22 14/13 14/14 14/15 14/21 15/5
 15/6 20/2 21/25 23/15 24/24 37/21 38/7
 40/22 41/7 41/11 43/12 43/13
use [4]  4/1 4/12 36/7 40/20
useful [2]  39/20 42/2
using [6]  4/11 12/14 12/17 12/21 39/8 39/9
usually [2]  6/9 12/25

**V**

venture [1]  15/22
versus [2]  3/4 10/15
very [10]  4/15 13/1 15/1 18/12 27/25 30/3
 36/10 39/2 43/6 43/11
vet [5]  16/9 25/12 25/13 27/13 33/14

## V

view [5]  20/3 27/3 27/6 27/12 31/3
views [1]  14/16
VNA [1]  29/6
vote [1]  15/19

## W

wait [5]  20/21 24/9 31/6 39/18 39/19
waiting [1]  15/3
walk [2]  7/4 39/10
want [20]  4/7 4/8 6/11 8/13 9/8 9/8 13/5 18/8
22/1 26/12 32/9 33/15 34/20 34/23 38/10
38/10 38/22 38/22 40/22 42/1
wanted [3]  6/24 13/15 41/25
wants [6]  6/19 14/11 28/1 34/8 34/8 41/7
was [31]  3/23 13/20 15/12 15/13 15/15 16/2
16/2 16/3 18/19 18/23 19/14 21/14 21/23
22/9 22/16 22/17 24/1 24/18 24/18 25/10
27/10 27/11 33/3 36/25 37/9 37/21 37/25
38/1 39/24 41/23 41/25
Washington [7]  1/5 1/14 1/19 1/23 2/4 2/15
2/24
wasn't [1]  33/7
waste [1]  13/5
way [9]  5/12 17/3 20/23 31/3 36/2 37/25 38/1
40/15 41/19
we [139]
we'll [10]  12/9 18/10 40/4 40/22 40/23 41/7
41/22 43/17 43/17 43/17
we're [23]  3/22 16/5 16/7 16/16 17/9 17/14
17/18 18/6 19/2 20/13 21/17 26/13 28/18
30/14 30/24 31/6 31/20 33/25 34/7 38/25
40/12 42/21 43/21
we've [18]  7/1 7/15 7/17 11/11 12/6 18/5
18/17 18/19 18/21 21/11 22/8 25/10 30/24
30/25 33/3 33/18 37/18 38/7
website [2]  25/4 28/2
week [5]  10/13 13/20 26/19 32/19 36/16
weeks [25]  18/5 21/18 22/5 22/12 22/13
22/14 22/18 22/19 22/22 22/22 23/9 27/8
27/11 28/21 29/12 29/20 31/1 31/13 32/7
32/16 33/6 33/7 33/18 36/4 37/18
weighty [1]  26/20
well [23]  3/18 8/18 9/12 13/16 14/23 15/22
17/7 18/9 18/12 20/1 20/19 21/16 23/5 28/5
28/6 28/24 30/21 35/3 35/5 35/11 39/6 40/18
42/14
well-capitalized [3]  28/5 35/3 35/5
went [2]  5/8 36/24
were [16]  3/19 10/19 13/24 13/25 14/3 14/6
15/14 18/25 20/13 22/16 24/1 33/4 36/2
36/24 42/11 44/5
what [72]
whatever [6]  17/1 17/1 25/20 27/3 27/6
37/18
whatsoever [1]  14/12
when [12]  10/1 12/7 14/4 14/5 14/7 15/17
16/4 19/19 34/20 34/20 34/22 35/17
where [7]  4/19 5/8 12/12 16/5 19/17 32/18
34/11
Whereupon [1]  44/4
whether [13]  7/20 10/9 14/16 17/18 17/21
17/23 17/23 19/7 29/20 31/3 31/7 31/13
33/23
which [14]  6/24 7/9 15/11 19/10 19/11 20/7
24/1 24/3 24/25 25/21 27/9 31/15 35/4 42/13
whichever [1]  26/24

who [19]  6/19 10/14 18/4 21/22 25/7 28/3
28/4 28/8 28/11 28/13 28/14 28/15 28/16
34/7 34/13 35/3 35/5 35/8 42/25
who's [1]  16/8
whoever [1]  9/24
whole [9]  17/4 17/6 22/9 25/4 26/1 32/14
32/21 36/23 36/24
whom [2]  36/20 42/12
whose [1]  4/12
why [7]  3/20 8/3 13/18 30/7 30/19 39/18
39/19
will [61]
willing [3]  4/25 30/24 42/14
willingness [1]  36/5
win [1]  19/12
wish [1]  23/17
within [3]  5/25 6/18 43/20
without [9]  14/13 14/14 14/15 15/5 15/6 22/1
34/12 34/22 35/1
witness [5]  5/1 6/4 10/10 10/11 38/24
witnesses [12]  5/3 5/5 5/12 6/6 9/10 9/13
9/14 36/20 38/8 40/16 42/9 43/2
won't [3]  9/20 27/21 28/12
wonderful [1]  9/9
word [3]  4/10 13/8 36/8
words [4]  17/12 20/13 22/8 23/6
work [13]  5/13 10/13 12/7 32/16 33/25 34/8
34/8 35/13 41/2 43/1 43/24 43/24 43/25
worked [1]  33/3
working [3]  8/2 34/4 37/15
world [1]  27/2
Worldwide [1]  2/19
worthwhile [1]  8/13
would [56]
wouldn't [1]  7/22
writing [2]  5/9 39/7
written [1]  6/5
wrong [3]  4/6 4/6 38/1

## Y

year [2]  20/12 22/19
years [2]  19/15 19/16
yes [19]  5/12 6/21 8/1 8/10 8/12 16/12 16/16
16/22 23/24 24/11 27/4 28/18 31/11 32/2
40/24 41/15 42/16 43/15 43/22
yesterday [1]  31/22
yet [4]  15/24 21/16 33/20 41/2
yeven [1]  2/21
YONATAN [2]  2/18 3/16
York [3]  2/8 2/12 2/20
you [209]
you'll [1]  30/15
you're [22]  4/8 5/5 5/11 5/23 5/25 6/11 6/20
7/21 8/4 8/8 9/9 9/25 12/17 12/21 12/21 17/1
21/13 21/13 31/25 32/18 36/10 40/3
you've [5]  5/22 6/7 19/4 37/11 37/12
your [88]
yours [2]  30/5 41/18
yourselves [1]  3/6

PX0009-053